UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

THOMAS RUSSELL                                                                              PLAINTIFF

v.                                                           CIVIL ACTION NO. 4:22-cv-165-MPM-JMV

ATTALA STEEL INDUSTRIES, LLC and
BILLY ATWOOD                                                                             DEFENDANTS

## ORDER

This matter is before the court on Plaintiff Thomas Russell's Motion to Compel [ECF No. 67] filed on August 18, 2023. The motion has been fully briefed and oral argument held. Consistent with the court's rulings from the bench, now memorialized herein, is the following:

On October 24, 2022, Russell filed his Complaint [ECF No. 1] for declaratory judgment, breach of contract, fraudulent/negligent misrepresentation, and fraudulent concealment arising from a license agreement dated August 31, 2018, between him as licensor and Defendant as licensee. In a nutshell, Russell holds the rights to the design and manufacture of a certain product (the "Product") made of High Grade Steel (apparently steel of grade 65 or 80). The license agreement recites that it "license[s] the Product to Attala Steel and Attala Steel agrees to manufacture the Product and promote the Product for sublicensing to non-related mills in accordance with this Agreement." *See* [ECF No. 1-1] at 2. Attala maintains that it has, at its option, essentially perpetual rights pursuant to the license and Russell disagrees. Russell contends, among other matters, Attala has breached the license agreement by not properly and timely paying him licensing fees and not promoting the manufacture and sale of the product.

On November 16, 2022, in lieu of an Answer, Attala moved to dismiss [ECF No.7] the Complaint. After briefing, on January 13, 2023, the court denied Attala's Motion to Dismiss, noting that "[t]he court accordingly believes that a robust discovery process is

essential in this case, but, if that process should prove inadequate to provide clarity regarding how defendants have been conducting themselves under the Agreement, then the awarding of an equitable accounting would seem to be a reasonable option." [ECF No. 35] at 13.

On February 13, 2023, Russell and Attala served their Initial Disclosures. Attala did not produce any documents but, in accordance with Rule 26, provided a description by category and location. *See* FED. R. CIV. P. 26(a)(1)(A)(ii). Then on February 16, 2023, Russell served Attala with his First Set of Interrogatories, First Requests for Production of Documents, and First Requests for Admissions. Russell provided Attala with an extension to respond to this written discovery.

On April 10, 2023, Attala responded to written discovery but did not produce any documents. On May 12, 2023, Russell sent Attala a good faith letter requesting Attala to withdraw its objections and to provide all responsive documentation (as well as any supplementation) by May 19, 2023. In response, on May 18, 2023, Attala provided its first document production. On this date Attala produced 116 pages; however, 102 of the 116 pages were copies of Russell's patent application. The next day, May 19, 2023, Attala amended its responses to Russell's written discovery. Attala's written interrogatory answers through this date stated that it had not utilized a third party to manufacture the Product.

On June 1, 2023, Russell served his Second Set of Interrogatories, Second Requests for Production of Documents, and Second Requests for Admissions. On June 2, 2023, Attala supplemented its May 18 document production.

On June 7, 2023, a company named Nucor responded to a third-party subpoena issued by Russell by providing approximately 339 invoices from Attala for Grade 65 and Grade 80 steel during the term of the License Agreement and a spreadsheet regarding the same.

On June 16, 2023, Russell served his Supplemental Initial Disclosures, providing Attala with the Nucor invoices and spreadsheet.

On July 3, 2023, Attala served its written Responses to Second Set of Second Set of Interrogatories, Requests for Production, and Requests for Admission. Attala did not produce any additional documents, but provided additional information requested by Plaintiff on July 27, 2023.

As of July 27, 2023, in total, Attala had produced 244 pages (102 of which are copies of Russell's patent application). The only financial documents in Attala's production were seven (7) Customer purchase orders for High Grade Steel and/or Product. Apparently, Attala had not produced *any* Attala invoices or proof of payment by its customers. Nor had it produced any financial statements reflecting total sales or sales of High Grade Steel and/or Product.

An informal conference regarding discovery was scheduled for August 8, 2023, but no resolution of the outstanding discovery disputes was accomplished. On August 18, 2023, Plaintiff filed the instant Motion to Compel seeking production of "all responsive documents requested by Plaintiff in his First Requests for Production of Documents, Second Requests for Production of Documents, First Set of Interrogatories, and Second Set of Interrogatories or, in the alternative, to Order an Equitable Accounting."

On August 25, 2023, Attala filed second amended answers to Russell's first set of written discovery and a first amended answer to Russell's second set of written discovery. On the same date Attala filed its response to the instant motion to compel, and on August 28, 2023, Russell replied. The matter was then noticed for oral argument which took place on September 8, 2023. Thereat, the court made the following rulings as to each contested discovery response, but first the court reiterates the law with respect to discovery responses that reference "general objections"

set out as preliminary matters and the law with regard to asserting objections to specific discovery request and then answering "subject to…" or "without waiving the objection…."

With respect to a preliminary listing of general objections that are then incorporated, *collectively*, in response to specific written discovery requests, they are not meaningful and are improper. *See Amos v. Taylor*, No. 4:20-cv-7-DMB-JMV, 2020 WL 7049848, at *8 (N.D. Miss. Dec. 1, 2020) ("[g]eneral objections may occasionally serve as an efficient response [when t]he court may consider and rule upon general objections raised against sets of interrogatories or requests for production." *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 304 (D. Kan. 1996). However, to serve this purpose, and to comply with the Federal Rules of Civil Procedure, the general objections must raise "specific objections" and "correspond[ ] to ... specific discovery requests." *Dickey v. Apache Indus. Serv., Inc.*, No. 18-572, 2019 WL 4261117, at *3 (M.D. La. Sept. 9, 2019) (collecting cases); *see Hall v. Louisiana*, No. 12-657, 2014 WL 2560579, at *1 (M.D. La. June 6, 2014)). "When they are disconnected from either the facts or the discovery requests, they are improper." *Id.* Other Mississippi federal courts have reached the same conclusion. *See SouthPoint Bank v. Origin Bank*, 2022 WL 342980, at *1 (S.D. Miss., Jan. 27, 2022) ("General Objections ... not mentioned in any of the responses … will be overruled as either inapplicable or abandoned.").

In this case, Attala lists preliminarily a dozen separate categories of "general objections" and then references them collectively in response to virtually every specific discovery request. I find that such objections are deemed waived under these circumstances.

As for responses to specific discovery requests that make objections followed by the caveat, "subject to" or "without waiving", *Amos* is again instructive. There the court found such objections waived and explained:

With the exception of objections involving privilege or work product, "the practice of responding to interrogatories and documents requests 'subject to' and/or 'without waiving' objections is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure." *Heller v. City of Dallas*, 303 F.R.D. 466, 486-87 (N.D. Tex. 2014) (cleaned up). Such an objection paired with a response 'preserves nothing and serves only to waste the time and resources of both the Parties and the Court.' *Id.* at 487. To the extent that Defendant produced discovery responses "subject to" or "without waiving" objections other than privilege or work product, such objections are waived.

Finally, as for newly raised objections in the amended responses where the amendment was made after the original response was due, these too are waived. "[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989). In responding to an interrogatory, "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." FED. R. CIV. P. 33(b)(4). And, "[i]f a party fails to timely respond in writing after being served with a request for production of documents, it is appropriate for the Court to find that the party's objections are waived, unless the court finds good cause and excuses [that] failure." *Richmond v. SW Closeouts, Inc.*, No. 3:14-cv-4298-K, 2016 WL 3090672, at *5 (N.D. Tex. June 2, 2016); *accord Henderson v. Union Pac. R.R. Co.*, No. CV 15-0669, 2016 WL 5936889, at *2 (W.D. La. Oct. 11, 2016) ("Although Rule 34 does not provide that untimely objections are waived, the Fifth Circuit has found that the waiver provision applies equally to Rule 34." (citing *In re United States*, 864 F.2d at 1156)). And, even where the responding party has timely served some objections to a Rule 34(a) request, this waiver extends to any grounds not stated in a timely objection. *See* FED. R. CIV. P. 34(b)(2)(B). Courts within the Fifth Circuit have previously disallowed this practice of permitting supplemental responses served after the deadline to raise new objections. *See, e.g., Talley v. Spillar*, 2017 WL 9288622, at *3 n.1 (W.D. Tex. Mar. 31, 2017); *see also Scott v. Mobilelink*

*Louisiana, LLC*, 2022 WL 3009111, at *6 (M.D. La. July 28, 2022). Therefore, any new objection raised in an untimely amended response is hereby waived.

## INTERROGATORIES

### INTERROGATORY NO. 3:

Identify every Person or entity to whom you have sold (or from whom you have purchased or "have made") High Grade Steel and/or Product since 2018.

### Original Response:

Subject to the General Objections, Attala adopts and incorporates by reference, as if fully set forth herein, its response to Interrogatory No. 7. Attala will supplement its response to this Interrogatory as soon as additional information is available.

### Motion to Compel:

A fulsome answer thereto will show every third party customer and manufacturer from whom Attala sold or purchased High Grade Steel and/or Product during the term of the License Agreement. Having a list of such Persons or entities may lead to admissible information should Russell determine that a third party document subpoena is necessary. For example, Russell, based on his own knowledge, sent a third party subpoena to Nucor which revealed that Nucor manufactured High Grade Steel and/or Product for Attala. It further showed that Attala purchased the same during 2020 and 2021 – years in which Russell did not receive any licensing fees.

Identifying third party customers and/or manufacturers may reveal: (1) potential parties who should have been in a sub-licensing agreement with Attala; and (2) potential failures to pay licensing fees. These are both important issues. Attala is the only party with access to this information. Attala is a corporate entity that keeps records and has resources available to

identify its customers and manufacturers. Moreover, the burden or expense, *if any*, of identifying responsive Persons or entities responsive does not outweigh its likely benefit.

Attala's reliance on its response to Interrogatory No. 7 is misplaced because that response does not reveal the third party customers and manufacturers, *i.e.*, the gravamen of Interrogatory No. 3. Accordingly, Russell requests that the Court order Attala to respond fully and completely to Interrogatory No. 3

**Response to Motion to Compel:** Attala "amended" its prior answer as follows:

Amended Response: Subject to the General Objections, Attala responds as follows:

Attala has sold High Grade Steel and/or Product to the following entities since 2018:

- Rosendin Electric, Inc. – North 301 Solar project (documents produced 6/2/23 – Bates-number ASI000120-ASI000186)

- Rosendin Electric, Inc. – Five Forks Solar project (see above for documents produced

- RES Construction, LP – Texas Wagyu Solar Construction project (documents produced 6/2/23 – Bates-number ASI000120-ASI000143)

- McCarthy Building Companies, Inc. – Willowbrook project (documents produced 5/19/23 – Bates-number ASI000111-000116, and on 6/2/23 – Bates-number ASI000117-ASI000119).

Copies of the Purchase Orders for each of these projects were previously produced to Plaintiff at ASI0000111-186. Attala has not had any sales of High Grade Steel and/or Product since the Willowbrook project for McCarthy, including no such sales in 2023.

Since 2018, Attala has not manufactured any High Grade Steel and/or Product. Instead, Attala has purchased 100% of its High Grade Steel and/or Product from Nucor Steel. Copies of all invoices between Attala and Nucor Steel for the purchase of High Grade Steel and/or Product since 2018 have been produced by Nucor Steel to Plaintiff in response to a

third- party subpoena by Plaintiff. See NUCOR0000001-339. Plaintiff has produced those documents to Attala as part of his supplemental document production. There are no additional 3rd parties who have manufactured or purchased High Grade Steel and/or Product since 2018.

**Plaintiff's Reply:**

Attala amended its response to Interrogatory No. 3 to state that it only purchased High Grade Steel and/or Product from Nucor and that Russell has all of those invoices pursuant to its third party subpoena. Attala states that it has only sold High Grade Steel and/or Product to 3 entities for 4 projects – 3 projects that occurred in 2019 and one that occurred in 2023. Attala does not provide an explanation for the High Grade Steel that it purchased from Nucor in 2020 and 2021, *i.e.*, years in which Russell did not receive any licensing fees. In other words, from Attala's response, it appears that Attala purchased High Grade Steel in 2020 and 2021 and then did not actually *sell* that High Grade Steel until 2023. Attala's response to Request No. 13 states that Attala purchases "product on an as needed basis through individual invoices." Why did Attala order "product" in 2020 & 2021 if it did not need it to sell to a customer? Attala states that it keeps financial records for at least 3 years. This action has been pending since October 24, 2022. Plaintiff via counsel contacted Attala regarding this dispute on July 12, 2022. Given this, the vast majority (if not all) of the requested records should be preserved by Attala. [*See* ECF No. 31, § 6E.]

**The Court's Ruling:**

I find that Defendant's initial response to Interrogatory No. 3 was inadequate, and the objections asserted therein, for the reasons discussed above, are waived. Likewise, I find the objections asserted in the amended response waived. However, I find that since the amended

response (not made, of course, until after a motion to compel had been filed) purports to completely answer the interrogatory proposed, no further response will be compelled.

## INTERROGATORY NO. 4:

Identify and describe with specificity all categories and/or types of records generated or retained by Attala (whether for accounting or other purposes) concerning the sale and delivery of High Grade Steel and/or Product, and collections of amounts due therefor.

## Original Response:

Attala objects to this interrogatory on the grounds that it is overly broad. Subject to the General Objections, Attala responds generally that it generates an invoice to the customer, which contains the product, quantity, and sales amount, but does not include the grade of material. Attala receives a check or other payment from the customer that references the invoice. Attala does not have an ERP system, or similar electronic system that keeps track of sales of materials. Attala's Operations Team maintains a spreadsheet that captures the grade of material sold to its customers.

## Motion to Compel:

Interrogatory No. 4 is not overly broad because it is narrowly tailored to the High Grade Steel and/or Product that is the subject of the instant lawsuit. Attala only responded generally, which does not constitute a fulsome answer. As a preliminary matter, Attala does not list purchase orders as a record retained by Attala concerning the sale and delivery of High Grade Steel and/or Product. This is clearly incorrect as the **only** financial documents that Attala produced were purchase orders. Attala did not produce any of the documents listed in its response to Interrogatory No. 4. Additionally, ledgers, financial statements, bills of lading, and other similar documents, to

the extent Attala uses the same, are responsive to Interrogatory No. 4. Accordingly, the Court should overrule Attala's objection and compel it to provide a complete answer thereto.

**Response to the Motion to Compel:** Attala "amended" its prior answer as follows:

Amended Response: Attala objects to this interrogatory on the grounds that it is overly broad. Subject to the General Objections, Attala responds generally that it generates an invoice to the customer, which contains the product, quantity, and sales amount, but does not include the grade of material. Attala receives a check or other payment from the customer that references the invoice. Attala does not have an ERP system, or similar electronic system that keeps track of sales of materials. Attala also adopts and incorporates by reference its responses to Interrogatory Nos. 3 and 7.

And by way of argument, Attala's counsel further stated: It is Attala's position that this is a full and complete response to Interrogatory No. 4. Further, Attala stands by its specific objection to the overly broad nature of this request. Plaintiff has been provided the relevant information to his claims in this case including the total amount of steel manufactured by Nucor for Attala and the amount of royalties due to him for same. Requesting that Attala identify every category and/or record for sale, delivery, and collection is not proportional to the needs of the case.

**Plaintiff's Reply:**

Attala amended its response to ***remove*** the following: "Attala's Operations Team maintains a spreadsheet that captures the grade of material sold to its customers." *Compare* ECF No. 1-2 with ECF No. 75-8 at Interrogatory No. 4. This removal is extremely important inasmuch as, without the aforementioned spreadsheet, Attala asserts that it has no Attala document that reflects the weight of the High Grade Steel and/or Product sold. Also, it begs the

question, is Attala now claiming that the spreadsheet does not exist? If so, why did Attala identify the spreadsheet in previous sworn answers to interrogatories? If the spreadsheet does exist, why did Attala omit it from its Second Amended Responses?

Also, as stated in the Motion to Compel, Attala's response does not identify purchase orders (which Attala clearly has), ledgers, financial statements, bills of lading, and other similar documents. For example, Russell produced to Attala documents that he received *from Attala* in conjunction with payment of his licensing fees that provided the following information: (1) the date Attala received payment from its customer; (2) invoice number; (3) beam size; (4) weight per individual beam; (5) quantity of beams sold; (6) total weight of beams; (7) Russell's royalty; (8) Attala's check number for royalties paid to Russell; (9) date of payment to Russell; and (10) the grade of steel used on the project. These documents can be found at Bates Nos. Russell 000155– 156, 000185–186 and will be filed under seal at a later date.

Similarly, Russell produced a text message between himself and Billy Atwood regarding Attala's failure to pay certain licensing fees. Included with the text message was an Invoice Register (which Russell also produced) that provided, in relevant part, the following information: (1) invoice number; (2) date of invoice; (3) name of the customer; (4) amount of the invoice; (5) beam type; (6) the weight of the beams; and (7) Russell's royalty fees owed. These documents can be found at Bates Nos. Russell 000015–000017, 000122–124, 000128–131 and will be filed under seal at a later date. These are the types of documents that Attala should produce but has not. Attala clearly has in its possession the information that Russell is requesting. Moreover, the documents show that Attala has the capability to generate reports that contain the necessary information.

Despite this, Attala claims that it has provided a full and complete response and that the request is overly broad. Attala asserts that Russell "has been provided the relevant information to his claims in this case including the total amount of steel manufactured by Nucor for Attala and the amount of royalties due to him for the same." [ECF No. 75 at 10.]. This is entirely inaccurate as Attala has not provided any documentation showing when it received payment for sold High Grade Steel, *i.e.*, documentation that shows when the 30-day window was triggered for Attala to pay Russell his licensing fees. Moreover, Attala does not get to pick and choose what documents that it thinks are sufficient. Russell limited his interrogatory to documents regarding High Grade Steel and/or Product during the term of the License, which is the subject of this lawsuit. Records related thereto are narrowly tailored and not overly broad. Attala's financial records are the best documents that can demonstrate compliance with the License Agreement. Attala has admitted that it does not have a formal document retention policy, and it appears from its other responses that Attala may not have some records. However, it does maintain them for at least 3 years. As such, Russell's request for a variety of records related to High Grade Steel and/or Product is essential to the case because it will give Russell the best opportunity to ensure that no documents "slipped through the cracks" – which would not be the first time. [ECF No. 1-3 at 1.]

**The Court's Ruling:**

Objections to the interrogatory, whether initially or as amended, are waived as discussed above. For the reasons articulated by Russell, Attala is compelled to fully respond to this interrogatory. Further, Attala shall include in its further response the specifics as relate to its deletion, without notice or explanation, to the reference in its original response to this

interrogatory to the "operation team's" spreadsheet reflecting the grade of material sold to customers.

**INTERROGATORY NO. 5:**

Identify with specificity all databases, applications, platforms, Document repositories (including, but not limited to SharePoint, network file shares, and third-party cloud based servers), and systems used by Attala for creating, maintaining, or storing Documents generated from or related to Attala's business operations, including email and financial records.

**Original Response:**

Subject to the General Objections, Attala states that it uses Microsoft Office 365 as its primary software platform. Attala also uses the Sage 5.0 accounting software package. Prior to 2021, Attala used a POP3 email system.

With the POP system, emails were downloaded directly to a computer from the service provider, and immediately deleted from the server. The emails were not stored or archived on a server, and as such, there is no data that can be searched or recovered prior to the implementation of the Microsoft Office 365 platform in 2021.

Attala currently uses the Microsoft Office 365 platform under a set of Business Premium licenses. This license set does not include eDiscovery, a tool that would provide Attala the ability to search and export content in Office 365 that is older than 90 days. Using the tool that was available to Attala, Message Trace, Attala did search for responsive documents during the preceding 90 days, and did not locate any responsive documents. Attala has been working with Microsoft, and recently obtained a license to the eDiscovery tool. Attala is currently searching its platforms from 2021 to present for documents

responsive to Plaintiff's discovery requests, and Attala will supplement its responses with any responsive information that it discovers.

**Motion to Compel**:

Attala's response to Interrogatory No. 5 does not appear to be complete. For example, Attala states that it does not have any emails prior to 2021. However, Attala produced numerous emails from 2019. Additionally, while a POP email system will delete an email ***on the server***, any such email will remain on the actual computer hard drive that sent/received the email unless it was deleted from the computer itself. Accordingly, if Attala still has the computers from the pre-Office 365 system, those computers should have responsive emails on them. If Attala conducted any backups of the computers, then the backup should have responsive emails on it. Again, it appears that this must be the case as Attala has produced pre-2021 emails. Accordingly, Russell requests that the Court compel Attala to provide a more complete answer.

**Response to the Motion to Compel:** Attala simply "amended" its prior answer as follows:

Amended Response: Subject to the General Objections, Attala states that it uses Microsoft Office 365 as its primary software platform. Attala also uses the Sage 5.0 accounting software package. Prior to 2021, Attala used a POP3 email system.

With the POP system, emails were downloaded directly to a computer from the service provider, and immediately deleted from the server. The emails were not stored or archived on a server, and as such, there is no data that can be searched or recovered prior to the implementation of the Microsoft Office 365 platform in 2021.

Attala currently uses the Microsoft Office 365 platform under a set of Business Premium licenses. This license set does not include eDiscovery, a tool that would provide Attala the ability to search and export content in Office 365 that is older than 90 days. Using the tool that was

available to Attala, Message Trace, Attala did search for responsive documents during the preceding 90 days, and did not locate any responsive documents. Attala has been working with Microsoft, and recently obtained a license to the eDiscovery tool. Attala searched its platforms from 2021 to present for documents responsive to Plaintiff's discovery requests, and email retained on the computer of Attala's former Vice President of Sales, Jordi Villaneuva, and produced emails related to Grade 65 and Grade 80 steel. See Bates-number ASI000001-000110, produced on 5/19/23; ASI000187-ASI000244 produced on 6/2/23; and ASI000245-ASI000253, produced on 8/25/23. Attala has located no additional responsive documents.

**Plaintiff's Reply:**

Attala amended its response by stating that it searched for the emails retained on Jordi Villaneuva's computer. However, this still appears incomplete as Attala did not search Kevin Heskett's, Hart Pettit's, Mark Lindsey's, or Jeff Morgan's computers, to the extent available to Attala. They were identified by Attala as having knowledge regarding the allegations, admissions, denials and affirmative defenses set forth in Attala's Answer. *See* [ECF No. 67-2 at Interrogatory No. 1.] Their computers would likely have responsive email communications, among other things.

**The Court's Ruling**:

Objections to the interrogatory, whether initially or as amended, are waived as discussed above. Further, I find the initial answer insufficient, but the amended answer, notably filed after the motion to compel, purports to be a complete disclosure of the requested information (principally the identity of databases, etc.), and it is therefore sufficient.

**INTERROGATORY NO. 6:**

Identify all Persons responsible for preparing, reviewing, or maintaining your accounting records such as sales/purchase orders, invoices, bills of lading, mill certificates, financial statements, general ledgers, subsidiary ledgers, sales journals, cash receipts journals, or similar financial records from 2018 to the present.

**Original Response:**

Attala objects to this interrogatory on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. Subject to the foregoing objections, and the General Objections, Attala identifies the following individuals: (1) Hart Pettit, Attala's Transportation Manager and former Controller (2) Jeff Morgan, Attala's Chief Financial Officer.

**Motion to Compel:**

Attala's financial records are the best documents that can demonstrate compliance with the License Agreement. Attala has admitted that it does not have a formal document retention policy, and it appears from its other responses that Attala may not have some records. As such, it may be necessary to depose personnel involved with the same in order to discover information regarding Attala's accounting records. Accordingly, Russell requests that the Court overrule Attala's objection and compel it to provide a complete answer thereto.

**Response to the Motion to Compel:** Attala "amended" its prior answer as follows:

Amended Response: Attala objects to this interrogatory on the grounds that it is overly broad as it requests information regarding every business transaction of Attala from 2018-present. Further, Attala objects as this interrogatory seeks information which would be costly for Attala to compile and would cause a significant business interruption. As there are only four (4) projects at issue under the terms of the License Agreement, Attala further objects that this

interrogatory is not reasonably calculated to lead to the discovery of relevant information nor is this interrogatory requesting information that is proportional to the needs of this case.

Subject to the foregoing objections, and the General Objections, Attala identifies the following individuals with information regarding High Grade Steel and/or Product: (1) Hart Pettit, Attala's Transportation Manager and former Controller (2) Jeff Morgan, Attala's Chief Financial Officer.

By way of argument Attala further argues: Attala stands by its specific objections to this interrogatory as this seeks information that is clearly not related to the License agreement at issue but rather seeks information regarding individuals doing work for the company on projects unrelated to High Grade steel at issue. Further, it is Attala's position that this is a full and complete response to Interrogatory No. 6.

**Plaintiff's Reply:**

Attala amended its response, in relevant part, by adding an objection that it would be costly for Attala to compile the requested information and would cause a significant business interruption. However, Attala does not provide an affidavit or other evidence that a request to merely ***identify*** the Persons responsible for reviewing or maintaining its accounting records such as sales/purchase orders, invoices, bills of lading, mill certificates, financial statements, general ledgers, subsidiary ledgers, sales journals, cash receipts journals, or other similar financial records from 2018 to present would be costly and cause a significant business interruption. *See Merrill*, 227 F.R.D. at 477 (noting that a party resisting discovery for being overly broad, burdensome, or oppressive must show as such by submitting affidavits or offering evidence revealing the nature of the burden.) Attala knows its employees and their responsibilities. If those responsibilities include reviewing or maintaining Attala's accounting records, then Attala should be able to provide Russell with their names.

**The Court's Ruling:**

Objections to the interrogatory, whether initially or as amended, are waived as discussed above. Further I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. Attala is compelled to provide the identity of all persons responsible for review and maintenance of its accounting records from August 2018 to present.

**INTERROGATORY NO. 8:**

Identify the date and amount of all Attala transactions for the sale, purchase, manufacture, or delivery of High Grade Steel and/or Product for which payment was not made to Plaintiff and state with specificity the reasons such payment was not made.

**Original Response:**

Subject to the General Objections, Attala is not currently aware of any applicable transactions for which payment was not made to Plaintiff.

**Motion to Compel**:

Nucor's document production shows that Attala purchased Grade 65 and/or Grade 80 steel during 2020 and 2021. To the extent those purchases resulted in the sale of High Grade Steel and/or Product during 2020 and 2021, Attala did not make any payments to Russell. Accordingly, Russell requests that the Court order Attala to supplement its response to Interrogatory No. 8 to the extent there are additional transactions for which Russell was not paid**.**

**Response to the Motion to Compel:** Attala "amended" it prior answer as follows:

Amended Response: Attala is not currently aware of any applicable transactions for which payment was not made to Plaintiff.  As detailed in response to Interrogatory No. 7, which Attala adopts and incorporates by reference, all transactions involving High Grade Steel and/or

Product through 2022 have been accounted for, and all royalties owed to Plaintiff have been paid. There have been no transactions involving High Grade Steel and/or Product in 2023.

And, by way of argument Attala adds: It is Attala's position that this is a full and complete response to Interrogatory No. 8, particularly when read in conjunction with the incorporation of the response to Interrogatory No. 7. Plaintiff did not object to Attala's previous responses to Interrogatory No. 7; however, to ensure that all responses are as comprehensive as possible, Attala supplemented that Response as well.

**<u>Plaintiff's Reply:</u>**

Attala states that "Nucor has manufactured 14,541,034 pounds of the steel for Attala" and that Attala has owed Plaintiff royalties to date totaling $145,410.34. This is non-responsive. The requested information concerns "Attala transactions for the sale, purchase, manufacture, or delivery of High Grade Steel and/or Product ...." It does not ask for information regarding the date or amount of payments to Plaintiff.

Further, Attala mistakenly reads the License Agreement as not requiring Attala to enter into a sublicense agreement to other non-related mills. This is incorrect. The License Agreement broadly defines a "Sub-licensee" to be "each Attala Steel ***contractor***, agent, representative, and/or sub-distributor procuring licenses for or ***handling Products*** ...." *See* [ECF No. 1.1 at § 2.1] (emphasis added.) Moreover, "[a]ny person or entity who sublicenses the Product from Attala Steel ***<u>shall enter</u>*** into a suitable sub license agreement which provides for the protection of Russell's intellectual property and indemnifies Russell from any claims relating to the manufacturer[,] sale or distribution of the Product." *Id*. at § 2.3(c) (emphasis added.)

Attala erroneously relies on Section 2.3(a), which gives Attala the authority, but not obligation, to offer sublicenses to any other mill(s) that ***request*** such license. *See id*. at § 2.3(a) (emphasis added.) This provision allows Attala to reject a sublicense request. However, it does ***not*** mean that an entity manufacturing High Grade Steel and/or Product on behalf of Attala does not have to enter into a suitable sublicense agreement. Attala's position is not a good faith reading of Section 2.3(a).

**The Court's Ruling:**

Objections to the interrogatory, whether initially or as amended, are waived as discussed above. Further, I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient as neither explains or addresses payments, if any, to Russell in connection with the 2020/21 Nucor High Grade Steel sales to Attala. Attala is compelled to fully answer.

**INTERROGATORY NO. 10:**

Identify with specificity all efforts you have made during the License Period to market, promote, or publicize High Grade Steel and/or Product.

**Original Response:**

Attala objects to this interrogatory on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. Subject to the foregoing objections, and the General Objections, Attala responds generally that Attala has made its customers aware that it offers Grade 65 and Grade 80 steel beams among its product offerings. These are specialized products with a limited market and are requested by sophisticated customers who are knowledgeable regarding the products. The customer sends Attala an RFP for a specific project in which the customer may specify the particular product and particular grade of

steel, including Grade 65 or Grade 80, and Attala manufactures the product to the customer's specifications.

**Motion to Compel:**

Interrogatory No. 10 is relevant and proportional. The License Agreement requires that Attala "promote" the Product. Accordingly, Russell requests that the Court overrule Attala's objection and compel it to respond with *specificity* as opposed to responding generally.

**Response to the Motion to Compel:** Attala amended its answer as follows:

Amended Response: Attala responds generally that Attala has made its customers aware that it offers Grade 65 and Grade 80 steel beams among its product offerings. Attala has also shared with customers the white paper issued by KiloNewton LLC entitled "*Resilience of High-Strength Steel Wide Flange Beams to Corrosion in Solar Ground Mount Systems*". These are specialized products with a limited market and are requested by sophisticated customers who are knowledgeable regarding the products. The customer sends Attala an RFP for a specific project that the customer has designed and engineered, in which the customer specifies the particular product and particular grade of steel, including Grade 65 or Grade 80, and Attala supplies the product to the customer's specifications.

And Attala also argued: It is Attala's position that this is a full and complete response to Interrogatory No. 10. Further, any objection raised by Plaintiff regarding the lack of specificity of the response is unfounded. Specifically, with regard to promoting the product, the License Agreement states in §2.1:

- Manufacture by Atwood Steel. Subject to the terms and conditions set forth herein, Russell agrees to license the Product to Attala Steel and Attala Steel agrees to

manufacture the Product and promote the Product for sublicensing to non-related mills in accordance with this Agreement in this regard:

- Attala Steel shall pay Russell a fee of $0.01 per pound of steel manufactured according to the agreement, in particular steel W6 beams with a steel grade of 65 or higher.

- Attala Steel shall honor any purchase order for the invention, provided that the purchase order meets his or the mills minimum quantity, price required and production schedule.

As is clear from the language in the License Agreement above, there are no specific obligations placed on Attala to market or promote High Grade steel.

**Plaintiff's Reply**:

Attala argues that it had no specific obligations to market or promote High Grade steel. This argument is unfounded. *See supra* at Subsection III. Subsection III reads as follows:

Attala argues that "there are no specific obligations placed on Attala to market or promote High Grade steel." [ECF No. 75 at 13.] Attala also argues that timeliness of payment is irrelevant because there is no penalty for an untimely payment under the License Agreement. Both arguments are meritless. The Court has already found that the issues of timeliness and promotion are relevant to this suit, stating that these two issues are *crucial* to the case. *See* [ECF No. 35 at 12–13.] In fact, the Court noted in its prior Order that it has two primary suspicions and concerns related to Attala's conduct:

> This court emphasizes that it will become even more willing to grant plaintiff relief in this case if he can additionally demonstrate that Attala has been performing its duties under the contract in a bad faith manner. Based upon the briefing presently before this court, it strikes this court as quite possible that plaintiff will be able to make such a showing.

> From reading the parties' briefing, this court has two primary suspicions and concerns, as it relates to the manner in which Attala has been performing its duties under the License Agreement. ***The first suspicion is*** ***that defendant has not*** ***been timely providing plaintiff with his proper share of the revenue arising from the License Agreement*** … In the court's view, admissions by counsel for Atwood that certain payments may have "slip[ped] through the cracks" and that other payments were made only after plaintiff had raised complaints about them tend to provide some basis for his suspicions that he has been shortchanged by defendant.
>
> Payment issues aside, ***this court has concerns that, after obtaining what it*** ***claims to be permanent rights to the Design, the defendant has not made*** ***reasonable efforts to market it***.

[ECF No. 35 at 8–9] (emphasis added.) Upon reading the License Agreement and the parties' briefing, the Court highlighted two issues as being of particular concern: (1) whether Attala has been timely paying Russell; and (2) whether Attala has made reasonable efforts to market High Grade steel and/or Product. *See id*.

The Court proceeds to state that, while it does not intend to grant either side relief in this case until discovery has been conducted and it has considered testimony at trial, the "potential exception is the granting of an equitable accounting to plaintiff, if the discovery tools available to him should prove inadequate to learn exactly how defendants have been conducting themselves ***with regard to*** ***crucial matters*** ***such as*** ***payment*** ***and*** ***marketing*** ***efforts*** ***under the License Agreement.***" [ECF No. 35 at 12–13] (emphasis added.) Further, the court "believes that reliable information in this regard is ***crucial*** to resolving this case, since, when deciding whether the Agreement is unconscionable or not, the proof of the pudding is, at least to a large extent, in the eating." *Id.* (emphasis added.)

The License Agreement requires Attala to promote High Grade Steel and/or Product and to timely pay its licensee fees. Section 2.1 obligates Attala to "promote the Product for sublicensing to non-related mills[.]" *Id*. at § 2.1. The Recitals state that "Attala Steel… shall act on behalf of Russell to negotiate and execute further sublicenses of the Product." *Id*. at Recital C. Section 2.2

of the License Agreement requires Attala to pay Russell "within 30 days of the receipt of good funds by Attala Steel from either his customer or the sublicensee." [ECF No. 1-1 at § 2.2.]

The fact that the License Agreement is silent on "late payment" penalties does not make evidence of late payments irrelevant. In fact, the Court recognized that the License Agreement is silent on a number of important issues, but the Court found that, for unconscionability purposes, silence in the License Agreement does not make irrelevant "whether the defendant has been acting in a good faith manner regarding issues which are not specifically addressed in the contract." [ECF No. 35 at 13.] Failure to promote and to timely pay (regardless of lack of penalties for late payment) is a clear breach of the unambiguous terms of the License Agreement and, as discussed by the Court, it may provide evidence of Attala acting in bad faith.

Accordingly, Russell requests that the Court overrule any and all objections by Attala premised on its argument that Atalla does not have obligations to promote High Grade Steel and/or Product and that "[t]imeliness of payments is not relevant in this matter." [ECF No. 75 at 6.]

**The Court's Ruling**:

Objections to the interrogatory, whether initially or as amended, are waived as discussed above. Further, I find the initial answer insufficient but the amended answer, notably filed after the motion to compel, purports to be a complete description of Attala's marketing efforts. Accordingly, Attala is not compelled to respond further.

**INTERROGATORY NO. 12:**

Identify all Attala contractors, agents, representatives, or distributors (excluding direct employees) that have handled High Grade Steel and/or Product.

**Original Response:**

Subject to the General Objections, Attala responds that it does not have any contractors, agents, representatives, or distributors who act as Sub-licensees under the License Agreement**.**

**Motion to Compel:**

Interrogatory No. 12 is relevant and proportional. Section 1.2 of the License Agreement provides "Attala Steel agrees… to require that each Attala Steel contractor, agent, representative, and/or sub-distributor procuring licenses for **or handling Products** ("Sub-licensees")  shall comply with the limitations and restrictions imposed by this Section 1.2…" [ECF No. 1-1 at § 1.2] (emphasis added.) Further, Section 1.2 states "Attala Steel's failure to comply with any of the provisions of this Section 1.2 shall be a material breach of this Agreement." *Id*.

Interrogatory No. 12 does ***not*** ask if Attala has any contractors, agents, representatives, or distributors who act as sub-licensees. Instead, it asks if there are any of these who ***handled*** High Grade Steel and/or Product. This is directly relevant to persons or entities that may have been "sub-licensees" as defined in Section 1.2 of the License Agreement. Any of these persons or entities who "handled" High Grade Steel and/or Product, should have entered into a sub-license agreement. [*See* Pl.'s Resp. in Opp. to Attala's Mot. to Dismiss, ECF No. 19, pp. 19-20]

**Response to the Motion to Compel:** Attala simply amended its response:

Amended Response: Subject to the General Objections, Attala responds that it does not have a Sub- license Agreement or contract with any contractors, agents, representatives, or distributors to act on Attala's behalf regarding the sale or offering for sale of High Grade Steel and/or Product. All of Attala's sales of High Grade Steel and/or Product have been direct customer sales.

To the extent this interrogatory seeks information regarding any contractor, agent, representative, or distributor from whom Attala has purchased High Grade Steel and/or Product, Attala adopts and incorporates by reference its response to Interrogatory No. 14.

**Plaintiff's Reply:**

Attala's amended response remains nonresponsive. For example, this response does not identify the entities or Persons that "handled" High Grade Steel and/or Product in transit from Nucor to Attala or from Attala to its customer. Notably, Section 2.6 of the License Agreement defines "Manufacture" as: "For purposes of this Agreement, manufacture will occur when the Product is placed in the possession of the common carrier by Attala Steel. Risk of loss or damage with respect to the Products shall be the responsibility of Attala Steel alone." [ECF No. 1-1 at § 2.6.] Accordingly, pursuant to the License Agreement, the identity of common carriers is relevant.

**The Court's Ruling:**

Objections to the interrogatory, whether initially or as amended, are waived as discussed above. Further, I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. Attala is compelled to search for and identify common carriers handling shipments of High Grade Steel (from August 2018 to present) to or from Attala.

**INTERROGATORY NO. 14:**

Identify all Attala contractors or vendors that Attala has contracted with (or requested) to manufacture or otherwise make High Grade Steel and/or Product.

**Original Response:**

Subject to the General Objections, Attala responds that it has not contracted with any contractor or vendor to manufacture the license product.

**Motion to Compel:**

Attala has made an unsworn representation that Nucor is the only vendor that manufactured High Grade Steel and/or Product during the term of the License Agreement. Accordingly, Russell requests that the Court order Attala to amend its response to Interrogatory No. 14.

**Response to the Motion to Compel:**

Amended Response: Since 2018, Attala has not itself manufactured High Grade Steel and/or Product. Attala has not entered into either a sublicense agreement or contract with any contractor or vendor to manufacture High Grade Steel and/or Product. Instead, Attala has purchased 100% of the High Grade Steel and/or Product from Nucor Steel as needed through individual invoices. Attala has not purchased any High Grade Steel and/or Product since 2018 from any third-party other than Nucor Steel.

Attala went on to add a reference to Exhibit I (*see* ECF No. 75-9) for its now sworn response thereto.

**Plaintiff's Reply:**

Russell withdraws its objection to Attala's response to Interrogatory No. 14 because Attala has now provided a sworn response thereto.

**The Court's Ruling:**

The objection by Plaintiff has been withdrawn, and as such no further response by Defendant is required.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

Please produce all Documents and/or tangible materials used, identified, or relied upon in responding to any of the interrogatories propounded to Attala.

**Original Response:**

Please see attached documents. Bates Nos. ASI000001–ASI000116. Attala reserves the right to supplement this response as discovery is ongoing.

**Motion to Compel:**

Attala's document production is generally facially deficient. Specifically, in response to Interrogatory No. 4, Attala stated that "it generates an invoice to the customer, which contains the product, quantity, and sales amount, but does not include the grade of material. Attala receives a check or other payment from the customer that references the invoice. Attala does not have an ERP system, or similar electronic system that keeps track of sales of materials. Attala's Operations Team maintains a spreadsheet that captures the grade of material sold to its customers."

Here, Attala has not produced invoices, proof of checks or other payment from the customer, or the spreadsheet that captures the grade of material sold to its customers. Each of these types of documents are relevant.

Attala does not have a formal document retention policy. Because of that, it is reasonable for Russell to be concerned that Attala has not retained every relevant document. In this case, four documents show the life of a transaction relevant to the License Agreement: (1) purchase order; (2) Attala's invoice; (3) checks and/or other payment; and (4) the spreadsheet detailing the weight of the material.[footnote omitted] Purchase orders and invoices are relevant as they are an integral part of the transaction process and may reveal absences in a production of checks and/or proof of payment and the spreadsheet. Checks and/or proof of payment are relevant as it shows the date that triggered the 30 days in which Attala had to pay Russell licensing fees.

The spreadsheet is relevant as it shows the weight of High Grade Steel and/or Product, which is how licensing fees are calculated.

The production of these documents are proportional to the needs of the case. Checks and other payment may reveal that Attala breached the License Agreement in two ways: (1) by not paying licensing fees; or (2) by not timely paying licensing fees. Moreover, for each relevant transaction all four documents should be produced, *i.e.*, purchase order, invoice, check/payment, and spreadsheet. However, if documents have not been retained, the presence of one document may reveal the absence of another. For example, if the spreadsheet shows that Attala sold a Grade 65 steel beam to a customer but there is no matching invoice. Or, alternatively, if there is an invoice for a project that was not recorded on Attala's spreadsheet.

Attala's various breaches of the Licensing Agreement are significant issues in this action. For example, the Court has already identified the timeliness of the license payments as a relevant topic of concern for Plaintiff's claims. *See* [ECF No. 35, p. 8] ("The first suspicion is that defendant has not been timely providing plaintiff with his proper share of the revenue arising from the License Agreement."). Further, the amount in controversy is unknown at this juncture because there is no way for Russell to know the extent of Attala's breaches. Russell has no access to the checks and/or proof of payment that Attala has received from its customers. Attala has the resources to provide it. The burden or expense of producing these documents does not outweigh its benefit. Accordingly, Russell requests that the Court order Attala to produce the invoices, checks and/or proof of payment, and the spreadsheet maintained by its Operations Team as described in response to Interrogatory No. 4. While not specifically mentioned in response to Interrogatory No. 4, Russell also requests that the Court order Attala to produce all responsive purchase orders.

**Amended Response:**

Responsive documents have been produced. See ASI000001–ASI000253. ASI000245-ASI000253 is being produced with these supplemental responses.

**Plaintiff's Reply:**

Attala did not raise ***any*** objection to Request No. 1. Yet, Attala has not produced a single Attala business record. In its Response [ECF No.75], Attala states that its invoices are irrelevant as they do not contain the weight and grade of steel. Attala's invoices are clearly relevant. *See* [ECF No. 68 at 15–17.] Notably, Attala does not discuss other documents it describes in response to its interrogatories. Specifically, checks and/or other payment and the spreadsheet maintained by Attala's Operations Team that captures the grade of material sold to its customers. [Footnote omitted] The checks and/or other payment are clearly relevant as it shows date on which Attala's 30-day window to pay Russel was triggered. Similarly, the spreadsheet is relevant as it shows the weight of sold High Grade Steel and/or Product, *i.e.*, the only document that Attala apparently maintains that can show the amount of licensing fees owed to Russell.

**The Court's Ruling**:

For the reasons articulated by the court at oral argument and as articulated by Russell in support of his motion, I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. Attala is compelled to respond fully, which should include, but is not limited to any High Grade Steel RFPS, invoices, spreadsheets, marketing or solicitation materials, or other documents used, identified, or relied upon in responding to any and all of the interrogatories propounded to Attala.

**REQUEST NO. 3:**

Please produce all sales/purchase orders, invoices, bills of lading, mill certificates, financial statements, general ledgers, subsidiary ledgers, sales journals, cash receipt journals, or similar financial records from 2018 to present concerning or reflecting the sale, purchase, or manufacture of High Grade Steel and/or Product.

**Original Response:**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. Subject to the foregoing objections, and the General Objections, Attala responds that, to the extent responsive documents exist, they will be produced.

**Motion to Compel:**

Request No. 3 is relevant and proportional to the needs of the case for the same reasons as Request No. 1 (described above). Other than the 7 purchase orders, Attala has provided no responsive documents. Accordingly, Russell requests that the Court overrule Attala's objection and compel production of all responsive documents.

**Amended Response:**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. Subject to the foregoing objections, Attala states that responsive documents have been produced. See Bates-number ASI000001-253. See also, NUCOR0000001-0000339.

**Plaintiff's Reply:**

Attala has not provided an affidavit or other evidence that Request No. 3 is overly broad and not calculated to lead to the discovery of relevant information. *See Merrill*, 227 F.R.D. at 477. Attala has not produced a single Attala business record. Moreover, Attala's argument

that it has provided a full and complete response to Request No. 3 is meritless for the reasons set forth in Russell's argument regarding Attala's response to Request No. 1 (described above and in Russell's motion to compel.)

**The Court's Ruling:**

Objections to the request, whether initially made or as amended, are waived as discussed above. Further I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. And, in that regard the court specifically notes that merely reciting that responsive documents are attached itself suggests the production is not inclusive of *all* responsive documents. Accordingly, like the courts' ruling with respect to Request No. 1, Attala is compelled to produce all responsive documents to this request. To the extent the responsive documents are duplicative of documents produced in response to Request No. 1, in lieu of producing them again in response to this request, Attala may identify them in response to this request by reference to their Bates number.

**REQUEST NO. 4:**

To the extent not covered by Request No. 3, please produce any and all Documents that reflect each individual payment amount and the date on which Attala received the payment from a customer or sublicensee for High Grade Steel and/or Product from 2018 to present.

**Original Response:**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. Subject to the foregoing objections, and the General Objections, Attala responds that, to the extent responsive documents exist, they will be produced.

**Motion to Compel:**

Request No. 4 is relevant and proportional to the needs of the case for the same reasons as Request No. 1 (described above.) Accordingly, Russell requests that the Court overrule Attala's objection and compel it to produce all responsive documents.

**Amended Response:**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information.

**Plaintiff's Reply:**

Attala has produced *no documents* responsive to this request. Attala has not produced a single Attala business record. We know that such documents can be produced. *See* documents identified as Bates Nos. Russell 000015–000017, 000122–124, 000128–131, 000155–156, 000185–186 and to be filed under seal at a later date. Attala has not provided an affidavit or other evidence that Request No. 4 is overly broad and not calculated to lead to the discovery of relevant information. *See Merrill*, 227 F.R.D. at 477. Moreover, Attala's argument that the timing of payments is not relevant is meritless. *See supra* at Subsection III.

**The Court's Ruling:**

Objections to the request, whether initially made or as amended, are waived as discussed above. Further, I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. And, in that regard the court specifically notes that merely reciting that responsive documents, to the extent they exist, have been produced is not a complete response in these circumstances. Accordingly, like the courts' ruling with respect to Request No. 1, Attala is compelled to produce all responsive documents to this request. To the extent the responsive documents are duplicative of documents produced in response to Request

No. 1, in lieu of producing them again in response to this request, Attala may identify them in response to this request by reference to their Bates number.

**REQUEST NO. 5:**

Please produce all records or Documents that reflect the amount of High Grade Steel and/or Product that Attala has manufactured, sold, and/or purchased from 2018 to present.

**Original Response:**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. Subject to the foregoing objections, and the General Objections, Attala responds that, to the extent responsive documents exist, they will be produced.

**Motion to Compel:**

Request No. 5 is relevant and proportional to the needs of the case. As stated, license fees are determined by the *weight* of the High Grade Steel and/or Product manufactured. As such, the amount of High Grade Steel and/or Product is relevant as it provides a way to calculate owed licensing fees. Moreover, the request is not overly broad as it is limited to High Grade Steel and/or Product during the relevant time period at issue in this lawsuit. The request is proportional to the needs of the case for the same reasons as set forth in Request No. 1 (described above.) Other than the 7 purchase orders, Attala has provided no responsive documents. Accordingly, Russell requests that the Court overrule Attala's objection and compel production of all responsive documents.

**Amended Response:**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. Subject to the foregoing objections, and the General Objections, documents reflecting the amount of High Grade Steel

and/or Product that Attala has purchased from 2018 to present are contained in the invoices between Attala and Nucor Steel, produced by Nucor Steel at NUCOR0000001-339. See also, ASI000245-ASI000253. Attala has also provided documents to the three customers and four projects that involved High Grade Steel and/or Product. See Attala's Response to Interrogatory No. 4, incorporated herein.

**Plaintiff's Reply:**

Attala has not provided an affidavit or other evidence that Request No. 5 is overly broad and not calculated to lead to the discovery of relevant information. *See Merrill*, 227 F.R.D. at 477. Attala has not produced a single Attala business record. Moreover, Attala's argument is meritless for the same reasons as set forth by Russell in regard to Attala's response to Request No. 1 (described above and in Russell's motion to compel.)

**The Court's Ruling:**

Objections to the request, whether initially made or as amended, are waived as discussed above. Further, I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. Accordingly, like the courts' ruling with respect to Request No. 1, Attala is compelled to produce all responsive documents to this request. To the extent the responsive documents are duplicative of documents produced in response to Request No. 1, in lieu of producing them again in response to this request, Attala may identify them in response to this request by reference to their Bates number.

**REQUEST NO. 6:**

Please produce all records or Documents concerning the delivery of High Grade Steel and/or Product from 2018 to present.

**Original Response:**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information.  Subject to the foregoing objections, and the General Objections, Attala responds that, to the extent responsive documents exist, they will be produced.

**Motion to Compel:**

Amended Request No. 6 is relevant and proportional for the same reasons as set forth in Request No. 1 (described above). Attala has provided no responsive documents. Accordingly, Russell requests that the Court overrule Attala's objection and compel production of all responsive documents.

**Amended Response:**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information.  Subject to the foregoing objection, see Attala's response to Request No. 5, incorporated herein.

**Plaintiff's Reply:**

Attala has produced ***no documents*** that are responsive to this request. Attala has not provided an affidavit or other evidence that Request No. 6 is overly broad and not calculated to lead to the discovery of relevant information. *See Merrill*, 227 F.R.D. at 477. Attala has not produced a single Attala business record. Moreover, Delivery information is relevant under the terms of the License Agreement. *See* [ECF No. 1-1 at § 2.6 ("manufacture will occur when the Product is placed in the possession of the common carrier by Attala Steel").] *See supra* at Subsection III.

**The Court's Ruling:**

Objections to the request, whether initially made or as amended, are waived as discussed above. Further, I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. Accordingly, like the courts' ruling with respect to Request No. 1, Attala is compelled to produce all responsive documents to this request. To the extent the responsive documents are duplicative of documents produced in response to Request No. 1, in lieu of producing them again in response to this request, Attala may identify them in response to this request by reference to their Bates number.

**REQUEST NO. 7:**

Please produce any marketing materials and/or correspondence with potential, current, or past customers regarding High Grade Steel and/or Product from 2018 to present.

**Original Response:**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. Subject to the foregoing objections, and the General Objections, Attala responds that there are no marketing materials responsive to this request. To the extent other responsive documents exist, they will be produced.

**Motion to Compel:**

Request No. 7 is relevant and proportional to the needs of the case for the same reasons applied to Interrogatory No. 10 (described above.) Here, Attala responds that there are no responsive "marketing materials," but does not provide a response as to "correspondence with potential, current, or past customers regarding High Grade Steel and/or Production from 2018 to present." Accordingly, Russell requests that the Court overrule Attala's objection and compel it to produce all responsive documents.

**Amended Response:**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. In particular, correspondence with potential, current, and/or past customers, to the extent those exist, who did not purchase High Grade Steel and/or Product are not relevant to the License Agreement and the royalties owed to Plaintiff. Subject to the foregoing objections, and the General Objections, Attala responds that there are no marketing materials responsive to this request. To the extent other responsive documents exist, they have been produced.

**Plaintiff's Reply:**

Attala has not provided an affidavit or other evidence that Request No. 7 is overly broad and not calculated to lead to the discovery of relevant information. *See Merrill*, 227 F.R.D. at 477. Moreover, Attala's argument that correspondence with potential, current, and/or past customers who did not purchase High Grade Steel and/or Product are not relevant is meritless. *See supra* at Subsection III.

**The Court's Ruling:**

Objections to the request, whether initially made or as amended, are waived as discussed above. Further, I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. And, in that regard the court specifically notes that merely reciting that responsive documents, to the extent they exist, have been produced is not a complete response in these circumstances. Accordingly, like the courts' ruling with respect to Request No. 1, Attala is compelled to produce all responsive documents to this request. To the extent the responsive documents are duplicative of documents produced in response to Request

No. 1, in lieu of producing them again in response to this request, Attala may identify them in response to this request by reference to their Bates number.

**REQUEST NO. 8:**

Please produce all records or Documents that reflect Attala's transactions for the sale, purchase, manufacture, or delivery of High Grade Steel and/or Product for which payment was made to Plaintiff.

**Original Response:**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. Subject to the foregoing objections, and the General Objections, Attala responds that, to the extent responsive documents exist, they will be produced.

**Motion to Compel:**

Request No. 8 is relevant and proportional to the needs of the case for the reasons stated in Request No. 1 (described above). Additionally, records relating to the delivery of High Grade Steel and/or Product may reveal a gap in Attala's documents if there is a Document showing delivery but no corresponding invoice, spreadsheet entry, and/or check or other payment. Other than the 7 purchase orders, Attala has provided no responsive documents. Accordingly, Russell requests that the Court overrule Attala's objection and compel production of all responsive documents.

Additionally, Nucor's document production shows that Attala purchased Grade 65 and/or Grade 80 steel during 2020 and 2021. As such, to the extent those purchases resulted in the sale of High Grade Steel and/or Product during 2020 and 2021, Attala did not make any payments to Russell for same. Accordingly, Russell requests that the Court compel Attala to supplement its

production to the extent there are additional transactions for which Russell was not paid and that are not identified in response to Interrogatory No. 7.

**Amended Response:**

Attala objects to this interrogatory on the grounds that it is overly broad as it requests information which would be costly for Attala to compile and would cause a significant business interruption. As there are only four (4) projects at issue under the terms of the License Agreement, Attala further objects that this interrogatory is not reasonably calculated to lead to the discovery of relevant information nor is this interrogatory requesting information that is proportional to the needs of this case. Documents reflecting Attala's transactions for the purchase of High Grade Steel and/or Product for which payment was made to Plaintiff are contained in the invoices between Attala and Nucor Steel, produced by Nucor Steel at NUCOR0000001-339. See also, ASI000245-ASI000253. Attala further responds that documents reflecting Attala's transactions for the sale of High Grade Steel and/or Product are contained in the Purchase Orders produced by Attala at ASI00000111-186.

**Plaintiff's Reply:**

Attala has produced ***no documents*** that are responsive to this request. Attala has not provided an affidavit or other evidence that Request No. 8 is overly broad. *See Merrill*, 227 F.R.D. at 477. Attala merely makes an unsworn blanket assertion that Request No. 8 requests information which would be costly for Attala to compile and would cause a significant business interruption. This is insufficient to satisfy Attala's burden. Notably, Attala has provided Russell with these documents in the past. These documents can be found at Bates Nos. Russell 000155–156, 000185– 186 and will be filed under seal at a later date. Despite this, Attala has not produced a single Attala business record.

**The Court's Ruling:**

Objections to the request, whether initially made or as amended, are waived as discussed above. Further, I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. Accordingly, like the courts' ruling with respect to Request No. 1, Attala is compelled to produce all responsive documents to this request. To the extent the responsive documents are duplicative of documents produced in response to Request No. 1, in lieu of producing them again in response to this request, Attala may identify them in response to this request by reference to their Bates number.

**REQUEST NO. 9:**

Please produce any and all Documents and writings, including (but not limited to) emails, letter correspondence, text messages, and instant messages on any social media, sent or received by you, any of your principals, officers, members, managers, agents, employees, or representatives regarding the sale, purchase, delivery, marketing, or use of High Grade Steel and/or Product from 2018 to present.

**Original Response:**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. Subject to the foregoing objections, and the General Objections, Attala responds that, to the extent responsive documents exist, they will be produced.

**Motion to Compel:**

Request No. 9 is relevant and proportional to the needs of the case. The requested communications are relevant as they may reveal transactions that are not properly documented and for which Russell may seek further information pursuant to a third party subpoena. They are

also relevant as they may show, including, but not limited to, the following: (1) knowledge of Attala that it was breaching the License Agreement; (2) failure to pay or to untimely pay licensing fees; and (3) failure of Attala to promote and/or market High Grade Steel and/or the Product. The communications are directly relevant to an important issue in this action, *i.e.*, breaches of the License Agreement. The amount in controversy is unknown as there is no way for Russell to know the extent of Attala's breaches absent Attala's response to written discovery. Russell does not have access to this information. Attala has the resources to produce these documents. For example, Attala could search its email accounts/text messages/social media accounts for the phrase "Grade 65" or "Grade 80" during the term of the License Agreement and review the non-electronic documents retained in Attala's files. The burden or expense of the proposed discovery does not outweigh its benefit.

Attala has not produced ***any*** internal communications or communications with its customers and/or manufactures responsive to Request No. 9. In fact, Attala has only produced 3 emails that do ***<u>not</u>*** include Russell. Accordingly, Russell requests that the Court overrule Attala's objection and compel production of all responsive documents.

**<u>Amended Response:</u>**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. Subject to the foregoing objections, and the General Objections, Attala responds that, to the extent responsive documents exist, they have been produced.

**<u>Plaintiff's Reply:</u>**

Attala has not provided an affidavit or other evidence that Request No. 9 is overly broad and not reasonably calculated to lead to the discovery of relevant information. *See*

*Merrill*, 227 F.R.D. at 477. Moreover, Request No. 9 is relevant and proportional to the needs of the case. *See* [ECF No. 68 at 20–21.]

**The Court's Ruling:**

Objections to the request, whether initially made or as amended, are waived as discussed above. Further, I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. And, in that regard the court specifically notes that merely reciting that responsive documents, to the extent they exist, have been produced is not a complete response in these circumstances. Accordingly, like the courts' ruling with respect to Request No. 1, Attala is compelled to produce all responsive documents to this request. To the extent the responsive documents are duplicative of documents produced in response to Request No. 1, in lieu of producing them again in response to this request, Attala may identify them in response to this request by reference to their Bates number.

**REQUEST NO. 10:**

Please produce any and all Documents and writings, including (but not limited to) emails, letter correspondence, text messages, and instant messages on any social media, sent or received by you, any of your principals, officers, members, managers, agents, employees, or representatives regarding the infringement of Plaintiff's intellectual property. This would include any Communications regarding another entity selling or manufacturing High Grade Steel and/or Product without a sublicense agreement.

**Original Response:**

Subject to the General Objections, Attala adopts and incorporates by reference, as if fully set forth herein, it response to Interrogatory No. 11.

**Motion to Compel:**

The Federal Rules of Civil Procedure allow a party to answer an Interrogatory by producing business records for examination if the burden of deriving or ascertaining the answer will be substantially the same for either party. *See* FED. R. CIV. P. 33(d). However, there is no comparable provision for the production of documents. In other words, the federal discovery rules do not allow a party to respond to a request for production of documents by referencing and incorporating a response to an interrogatory. A party is entitled to examine requested business records and are not required to rely on a party's interrogatory responses in substitution of documentation. Accordingly, Russell requests that the Court compel production of all responsive documents.

**Plaintiff's Reply:**

Russell is withdrawing his challenge to Attala's response to Request Nos. 10 & 11.

**The Court's Ruling:**

The objection to the response to Request No. 10 has been withdrawn.

**REQUEST NO. 11:**

Please produce any Documents that demonstrate an infringement of Plaintiff's intellectual property.

**Original Response:**

Attala adopts and incorporates by reference, as if fully set forth herein, its response to Interrogatory No. 11.

**Motion to Compel:**

The Federal Rules of Civil Procedure allow a party to answer an Interrogatory by producing business records for examination if the burden of deriving or ascertaining the answer will be substantially the same for either party. *See* FED. R. CIV. P. 33(d). However, there is no

comparable provision for the production of documents. In other words, the federal discovery rules do not allow a party to respond to a request for production of documents by referencing and incorporating a response to an interrogatory. A party is entitled to examine requested business records and are not required to rely on a party's interrogatory responses in substitution of documentation. Accordingly, Russell requests that the Court compel production of all responsive documents.

**Plaintiff's Reply:**

Russell is withdrawing his challenge to Attala's response to Request Nos. 10 & 11.

**The Court's Ruling:**

The objection to the response to Request No. 11 has been withdrawn.

**REQUEST NO. 12:**

Please produce any and all Documents and writings, including (but not limited to) emails, letter correspondence, text messages, and instant messages on any social media, sent or received by you, any of your principals, officers, members, managers, agents, employees, or representatives regarding the negotiation and execution of the License at issue in the instant lawsuit.

**Original Response:**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. Subject to the foregoing objections, and the General Objections, Attala responds that, to the extent responsive documents exist, they will be produced.

**Motion to Compel:**

Request No. 12 is relevant and proportional to the needs of the case. An important issue in this action is whether Attala made fraudulent and/or negligent misrepresentations during the negotiation and execution of the License Agreement. Communications related thereto are clearly relevant. Moreover, Russell does not have access to the same. Attala has the resources to produce the requested Documents. Any burden or expense does not outweigh the benefit of the discovery. Attala has provided no responsive documents. Accordingly, Russell requests that the Court overrule Attala's objection and compel production of all responsive documents.

**<u>Amended Response:</u>**

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information. Subject to the foregoing objections, and the General Objections, Attala responds that, there are no documents responsive to this request. In 2018, when the License was negotiated and entered into, Attala was owned by co-defendant Billy Atwood. Mr. Atwood negotiated and entered into the License on Attala's behalf. Mr. Atwood subsequently sold Attala and is no longer employed by the company. As set forth in detail in Attala's response to Interrogatory No. 5, Attala does not have Mr. Atwood's emails prior to his sale of Attala.

**<u>Plaintiff's Reply:</u>**

Attala has not provided an affidavit or other evidence that Request No. 12 is overly broad and not reasonably calculated to lead to the discovery of relevant information. *See Merrill*, 227 F.R.D. at 477. Instead, Attala has amended its response to state that it does not have access to Mr. Atwood's emails prior to his sale of Attala. Notably, Attala does not claim to have searched for emails, letters, and/or text messages from any of its employees who were employed at Attala when the License Agreement was negotiated for and executed. For example, to the

extent any of the following were employed by Attala during that time frame: Mark Lindsey, Hart Pettit, Jordi Villanueva, or Jeff Morgan (all identified by Attala.) It seems likely that Mr. Atwood would have communicated regarding the negotiation and execution of the License Agreement with other Attala employees.

**The Court's Ruling:**

Objections to the request, whether initially made or as amended, are waived as discussed above. Further, I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. As Plaintiff pointed out, there are apparently other avenues (aside from access to Mr. Atwood's email account) to search for potentially responsive documents. Attala may, for instance, search the email accounts of employees who would have communicated with Mr. Atwood concerning the negotiation and execution of the License Agreement. Attala is thus ordered to conduct a more thorough search related to Request No. 12, and all responsive documents shall be produced.

**REQUEST NO. 14:**

Please produce any and all Documents that show another entity has manufactured, distributed, or handled High Grade Steel and/or Product, regardless of whether there is an agreement and/or sublicense between the entity and Attala regarding the same.

**Original Response:**

Subject to the General Objections, Attala responds that no other entity has manufactured or distributed Grade 65 or Grade 80 steel on Attala's behalf, nor acted as a Sub-licensee. Therefore, there are no documents responsive to this request.

**Motion to Compel:**

Attala's response to Request No. 14 is incorrect. *See supra* at pp 3–4, § II.B. Accordingly, Russell requests that the Court compel Attala to supplement its production.

**Amended Response:**

Attala responds that Nucor Steel has manufactured 100% of Attala's High Grade Steel and/or Product since 2018. See NUCOR 0000001-339. See also, ASI000245- ASI000253.

**Plaintiff's Reply:**

Attala has not fully supplemented its response to Request No. 14. For example, Attala has not produced any <u>Attala</u> documents regarding the distribution or handling of High Grade Steel and/or Product. Moreover, Attala has not produced their invoices or emails with Nucor such that Russell can compare the two productions.

**The Court's Ruling:**

Objections to the request, whether initially made or as amended, are waived as discussed above. Further I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. As Plaintiff points out, the documents related to the Nucor transactions have strictly been produced by Nucor, not Attala. Accordingly, like the courts' ruling with respect to Request No. 1, Attala is compelled to produce all responsive documents to this request. To the extent the responsive documents are duplicative of documents produced in response to Request No. 1, in lieu of producing them again in response to this request, Attala may identify them in response to this request by reference to their Bates number.

**REQUEST NO. 15:**

Please produce any and all Documents and writings, including (but not limited to) emails, letter correspondence, text messages, and instant messages on any social media, sent or received by you, any of your principals, officers, members, managers, agents, employees, or

representatives regarding any entity's manufacturing or handling of High Grade Steel and/or

Product.

**Original Response:**

Subject to the General Objections, Attala responds that no other entity has

manufactured Grade 65 or Grade 80 steel on Attala's behalf, nor acted as a Sub-Licensee.

Therefore, there are no documents responsive to this request.

**Motion to Compel:**

Attala's response to Request No. 15 is incorrect. *See supra* at pp 3–4, § II.B.

Accordingly, Russell requests that the Court compel Attala to supplement its production.

**Amended Response:**

Subject to the General Objections, Attala responds that documents regarding Nucor

Steel's manufacturing of High Grade Steel and/or Product for Attala have been produced. See

NUCOR000001-339.

**Plaintiff's Reply:**

Attala amended its response to correct its answer that no other entity had

manufactured Grade 65 or Grade 80 steel on Attala's behalf. However, Attala states that it

has provided all responsive documentation. This appears incorrect. Attala has not provided

any Documents and writings between itself and Nucor regarding Nucor's manufacturing or

handling of High Grade Steel and/or Product. Russell only has the invoices that it received from

Nucor pursuant to a third- party subpoena.

**The Court's Ruling:**

Objections to the request, whether initially made or as amended, are waived as discussed above. Further I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. As stated in the court's ruling on Request No. 14, Attala has yet to produce any documents from Attala itself related to the Nucor transactions. Accordingly, like the courts' ruling with respect to Request No. 1, Attala is compelled to produce all responsive documents to this request. To the extent the responsive documents are duplicative of documents produced in response to Request No. 1 and/or No. 14, in lieu of producing them again in response to this request, Attala may identify them in response to this request by reference to their Bates number.

## REQUEST NO. 16:

Please produce any and all Documents that reflect the date(s) on which Attala received each payment for every sale of High Grade Steel and/or Product since 2018.

### Original Response:

Attala objects to this request on the grounds that it is overly broad and not reasonably calculated to lead to the discovery of relevant information Subject to the foregoing objections and General objections, Attala responds that, to the extent responsive documents exist, they will be produced.

### Motion to Compel:

Request No. 16 is relevant and proportional to the needs of the case. The date in which Attala receives payment for High Grade Steel and/or Product triggers the 30 days that Attala has to timely pay Russell under the License Agreement. Failure to timely pay his licensing fees is a breach. Attala has provided no responsive documents. Thus, Russell requests that the Court overrule Attala's objection and compel production of all responsive documents.

**Amended Response:**

Attala objects to this request on the ground that it is duplicative of Request No. 4. In addition, Attala objects to this request on the grounds that it is overly broad as it requests information which would be costly for Attala to compile and would cause a significant business interruption. As there are only four (4) projects at issue under the terms of the License Agreement, Attala further objects that this request is not reasonably calculated to lead to the discovery of relevant information nor is this request seeking information that is proportional to the needs of this case. Subject to the foregoing objections, Attala states, please see its response to Interrogatory No. 7, which is incorporated herein.

**Plaintiff's Reply:**

Attala has produced ***no documents*** that are responsive to this request. Attala has not provided an affidavit or other evidence that Request No. 16 is overly broad. *See Merrill*, 227 F.R.D. at 477. Instead, Attala merely states that Request No. 16 requests information which would be costly for Attala to compile and would cause a significant business interruption. This is insufficient to satisfy Attala's burden.

Attala amended its response to include an objection that Request No. 16 is duplicative of Request No. 4 and to refer to its response to Interrogatory No. 7. While Request No. 16 and Request No. 4 may be duplicative, Attala has not provided responsive documentation to either request. Attala has not produced a single Attala business record. Moreover, Attala has provided no legal authority to support its position that it may respond to a request for production of documents by referring to its response to an interrogatory. Moreover, Interrogatory No. 7 is non-responsive. The request asks for documents that reflect the date Attala received payment – not the date Attala paid Russell.

**The Court's Ruling:**

Objections to the request, whether initially made or as amended, are waived as discussed above. Further I find the initial answer insufficient and the amended answer, notably filed after the motion to compel, also insufficient. Date of payment information, as Plaintiff has explained, is plainly relevant to the issues in this case – namely payments received by Attala and the timeliness of payments to Russell. Accordingly, like the courts' ruling with respect to Request No. 1, Attala is compelled to produce all responsive documents to this request. To the extent the responsive documents are duplicative of documents produced in response to Request No. 1 and/or No. 4, in lieu of producing them again in response to this request, Attala may identify them in response to this request by reference to their Bates number.

**IT IS THEREFORE ORDERED** that the motion to compel is granted in part as described above. Defendants shall produce the relevant responses and documents in accordance with the ruling of the undersigned from the September 8, 2023, hearing, which are memorialized in writing herein. Defendants were given three weeks from the date of the hearing, or up to and including September 29, 2023, to produce all outstanding responses and documents. The court reaffirms this deadline and orders Defendant to complete its production by the conclusion of September 29, 2023.

**SO ORDERED** this 19th day of September, 2023.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**