**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**THOMAS RUSSELL**                                                          **PLAINTIFF**

**v.**                                                  **CASE NO.: 4:22CV165-MPM-JMV**

**ATTALA STEEL INDUSTRIES, LLC;
BILLY ATWOOD**                                                  **DEFENDANTS**

**ORDER**

On January 13, 2023, this court issued an order denying defendant's Rule 12 motion to dismiss, and, in doing so, it provided an extensive discussion of the facts of this case. This court will not repeat that discussion here, but it will reiterate its statement in its order that:

> This court is aware that the parties (particularly plaintiff) have limited resources, and it accordingly advises them that, with one potential exception, it does not intend to grant either side relief in this case until discovery has been conducted and it has considered testimony at trial. That potential exception is the granting of an equitable accounting to plaintiff, if the discovery tools available to him should prove inadequate to learn exactly how defendants have been conducting themselves with regard to crucial matters such as payment and marketing efforts under the License Agreement.

[Order at 12-13]. This court thus made clear its view that a trial would be required in this matter and that it did not intend to grant either side summary judgment, with the possible exception of the award of an equitable accounting.[1] In writing these words, this court was attempting to save the parties the expense of preparing unnecessary summary judgment briefing, but both sides have nevertheless chosen to file summary judgment briefs which largely repeat the arguments they made in their briefing on the motion to dismiss. While the parties were within their rights in doing so, this court does not believe that discovery in this case produced any major revelations,

---

[1] After considering the parties summary judgment arguments, this court concludes that the best course of action is to proceed to the initial bench trial, rather than delaying this matter further with additional discovery.

1

particularly since their respective factual positions were already reasonably clear based upon the briefing on the motion to dismiss.

This court has reviewed the exhibits from discovery, in particular the depositions of Russell and Atwood, and they simply confirm the tentative impressions stated in its order denying dismissal. Namely, it appears to this court that defendant Atwood, acting on behalf of Attala Steel, may have acted in a reprehensible manner by slipping a provision into the contract at issue in this case which made it renewable each five years, but only at Attala's discretion. The evidence also appears to support plaintiff's assertion that Atwood slipped this provision into the contract in spite of falsely assuring him that the latest contractual draft he submitted merely reflected certain changes which the parties had specifically discussed between them during negotiations. In so stating, this court notes that Russell testified in his deposition that:

> Russell: I trusted Billy. He said there were three changes, and then subsequently four changes when we added the "including Canada and Mexico" to the agreement. I noted those changes, and that was it. I didn't -- I did not specifically read every word of what was boilerplate. He said, "These are the changes" -- he said, "These are the changes that, you know, we want to make." I looked at those, okay. I signed it.

[Depo. at 58]. For his part, Atwood professed not to recall whether he made this assurance to plaintiff or not:

> Q: Did you ever in any way tell Mr. Russell that the only changes made to his Steel of West Virginia draft were the ones that you had specifically identified to him?
> Atwood: I don't remember that conversation.

[Depo. at 34]. When asked the same question earlier in the deposition, Atwood similarly responded "I don't recall. I just don't recall. If I did, I don't remember it." [Depo. at 28].

It thus seems clear that plaintiff has much stronger proof on this issue, since he is the only one who claims to recall the conversation at issue. If this court were to accept plaintiff's testimony as true, then it would find Atwood's alleged conduct to be quite unethical, but it notes

2

once again that, to prove fraud under Mississippi law, the plaintiff must demonstrate that he had the "right to rely" upon the truthfulness of the defendant's assertions. *See Franklin v. Lovitt Equip. Co.*, 420 So.2d 1370, 1373 (Miss. 1982). As this court noted previously, a ruling that plaintiff had the right to rely upon Atwood's assertion would be quite problematic under the facts of this case, since he could – and should - have discovered the actual provisions of the contract simply by reading it. This court believes that, particularly in the context of a contract whose provisions are being actively negotiated between two sophisticated business entities, it would be of very questionable public policy to absolve either side of the responsibility of reading a contract before signing it.

In noting its inclinations in this regard, this court nevertheless offered plaintiff a ray of hope in its order denying dismissal, writing that:

> In light of this court's concerns in this regard, it is reluctant to grant plaintiff relief in this case based solely upon how, he alleges, the License Agreement was negotiated. This court notes, however, that in addition to the alleged misrepresentations during negotiations, plaintiff is able to rely upon very extensive authority holding that perpetual or indefinite contracts are disfavored under the law. The Fifth Circuit has held, for example, that "this circuit ... does not favor perpetual contracts" and "presumes that [any such] contract is terminable at will." *Trient Partners I Ltd. v. Blockbuster Ent. Corp.,* 83 F.3d 704, 708 (5th Cir. 1996), citing *Delta Serv. & Equip., Inc. v. Ryko Mfg. Co*., 908 F.2d 7, 9 (5th Cir. 1990). The Mississippi Supreme Court has long followed a similar rule, making clear that "[p]erpetual contracts of this character will not be tolerated by the law, or rather, will not be enforced as imposing an eternal and never-ending burden." *Rape v. Mobile & O.R. Co.,* 136 Miss. 38, 100 So. 585, 587 (1924). In arguing that the renewal provision in this case is tantamount to a perpetual contract, plaintiff is able to offer substantial persuasive authority as well. *See, e.g. Armstrong Business Services, Inc. v. H & R Block*, 96 S.W.3d 867, 877 (Mo. App. 2002) ("The practical effect of the duration provision in the franchise agreements is the creation of a perpetual contract. … In the absence of a clear and compelling declaration of the parties' intent to create perpetual franchise agreements, the agreements will not be recognized as such.").
> In the court's view, the combined effect of plaintiff's arguments regarding the dishonest manner in which, he claims, the License Agreement was negotiated, and the substantively oppressive nature of what appears to be, for all intents and purposes, a perpetual contract, renders his arguments stronger than if he merely relied upon one or the other. This court emphasizes that it will become even more willing to grant plaintiff relief in this case if he can additionally demonstrate that Attala has been performing its

3

>duties under the contract in a bad faith manner. Based upon the briefing presently before this court, it strikes this court as quite possible that plaintiff will be able to make such a showing.

[Order at 7-8].

This court thus raised the possibility that it would use its equitable powers to rescind or limit the disputed renewal provision, and thus free plaintiff from the toxic business relationship which exists between the parties in this case. This court still believes, however, that, in order to establish a right to obtain such an order, plaintiff must show "something more" than unethical conduct by Atwood in negotiating the contract, such as by establishing that the contract is substantively contrary to public policy and/or by demonstrating that Attala has been performing its duties under the contract in a bad faith or lackadaisical manner.[2] It appears from the parties' summary judgment briefing that plaintiff will attempt to establish such bad faith conduct at trial by demonstrating that defendant did not pay him royalties which it owed in respect to business dealings with NUCOR, a third-party business entity. In its motion for summary judgment, defendant seeks for this court to declare plaintiff's evidence relating to NUCOR insufficient as a matter of law, but, after reviewing the parties' submissions, this court continues to believe that this is the sort of matter which is best addressed at trial, where it can review the business records in question and ask the parties questions regarding that evidence.

Considering plaintiff's failure to read the contract prior to signing it, it seems very unlikely that he will be permitted to seek financial recovery, via a fraud claim, for defendant's actions during the negotiations in this case. In expressing its rather strong inclination in this

---

[2] In its summary judgment briefing, defendant notes that the contract in this case is not, strictly speaking, a perpetual contract, merely one which can be renewed indefinitely at its discretion. This court tends to agree that this distinction reduces somewhat the precedential weight of authority relating to perpetual contracts, but it still believes that the contract in this case implicates some of the same policy concerns which are applicable in the perpetual contract context.

regard, this court believes that it is holding plaintiff accountable for his failure to exercise due care before signing the contract. It seems quite arguable, however, that plaintiff should face a lower bar in seeking to avoid being joined at the hip, potentially for life, to a defendant who (he alleges) has dealt with him in a very dishonest manner. In so stating, this court would observe that, even if the contract at issue in this case is not a true perpetual contract, a provision which allows defendant sole discretion to gain control over plaintiff's hard work and creativity for the rest of his life is a harsh one indeed, both for plaintiff and for the free marketplace.

This court thus believes that it is dealing with a provision which found its way into the contract under procedurally reprehensible circumstances and which substantively raises serious public policy concerns. Accordingly, the result which this court would "like" to reach, from a fairness and equity standpoint, is, in the words of the Mississippi Supreme Court in *Mobile*, to decline to "enforce[] the contract as an eternal and never-ending burden" to plaintiff. *Mobile*, 100 So. at 587. In so stating, this court notes that plaintiff cites cases from other jurisdictions in which courts refused to apply renewal clauses under various circumstances which the courts deemed to be unfair. *See Armstrong Business Serv. v. H & R Block*, 96 S.W.3d 867 (Mo. App. 2002); *Nikas v. Hindley*, 108 S.E.2d 98 (Ga. Ct. App. 1959); *Spanski Enter., Inc. v. Telewizja Polska S.A.,* 832 Fed.Appx. 723 (2nd Cir. 2020). While this court acknowledges that these cases (unsurprisingly) involved factually different circumstances, it believes that this case presents its own circumstances which provide good reason for looking skeptically upon the renewal provision at issue here. These factors include the dishonesty which defendant allegedly showed in inserting the renewal provision into the contract in the first place and also the fact that this case involves plaintiff's patented invention, which, this court believes, deserves a fair opportunity to succeed in the marketplace.

5

In its briefing, defendant contends that plaintiff's high-grade steel post invention simply has not attracted a great deal of interest from the public, [brief at 10] which seems to indicate that it regards it as a failure of sorts. However, this court must wonder why, if this is the case, defendant is spending a great deal of money in seeking to retain perpetual rights over a failed invention. This court must also wonder whether, given the bad blood which clearly exists among the parties, defendant will be properly motivated to market plaintiff's invention or whether it might seek to let it wither on the vine, either out of spite or as leverage to compel plaintiff to "pay for his freedom" from the contract. While this court has no firm belief that this would occur, the reasonable possibility that it would appears to be good reason to give plaintiff the freedom he seeks to market his product personally or with a partner whom he trusts. This court believes that this result would be consistent not only with plaintiff's best interests, but those of the free marketplace as a whole.

Plaintiff clearly believes in his invention, as evidenced by the amount of money he is spending to regain exclusive rights to it. Moreover, the U.S. Patent and Trademark Office regarded plaintiff's invention as sufficiently novel to award him a patent on it. In its prior order, this court observed that proof that defendant has not made reasonable efforts to market plaintiff's invention might constitute that "something more," above and beyond dishonesty in negotiations, which would support the relief he seeks. While this court doubts that plaintiff will be able to produce sufficient evidence on this point to support an actual breach of contract claim,[3] the factual disconnect between the parties' vigorous litigation of this case and what defendant concedes to be the anemic sales results which it has produced tends to "move the needle" even

---

[3] This observation applies equally to plaintiff's proof regarding the dealings with NUCOR, which proof appears, at first blush, to be less than compelling but which might tend to "move the needle" a bit further towards granting plaintiff the equitable relief he seeks.

6

further in this court's mind towards granting plaintiff the freedom he seeks. In so stating, this court notes that, while it lacks the expertise to properly assess the value of plaintiff's invention, both sides to this litigation certainly appear to be treating it as something with a potential to obtain significantly better sales results than defendant has obtained to date.

In light of the foregoing, this court believes that rather strong public policy considerations support granting plaintiff the freedom he seeks to take his product as far as it will go in a free marketplace. This court is very much aware, however, that contractual provisions should not lightly be set aside or altered, and it is presently undecided whether it has the authority to do so in this case. This court believes that it will be in a much better position to decide this issue after it considers the full testimony of the parties at trial and after it considers any additional arguments they may wish to present at that trial. If this court does conclude, after considering the testimony at trial, that Atwood acted dishonestly in representing to plaintiff that only the specifically-discussed changes had been made to the draft contract, then it believes that this conclusion would validly impact upon the question of whether it would be an undue burden to grant defendant the option to control plaintiff's product for (potentially) the rest of his life. In so stating, this court would observe that dishonest people tend not to suddenly become honest overnight, and it can fully understand plaintiff's desire to not be tied for life to a business relationship with an individual whom he simply (and – if his version of events is accurate - reasonably) does not trust. This court believes this to be the case regardless of whether plaintiff is able to prove that defendant acted in bad faith in the specific example of the dealings with NUCOR.

This court therefore reiterates its previously-stated view that resolving the factual issues in this case will require a trial, but, in the interest of judicial economy, it will schedule the

7

upcoming trial solely as a bench trial, relating to the equitable relief which plaintiff seeks. In adopting this approach, this court reiterates that plaintiff's fraud claims in this case appear to fail based upon the requirement that he have had the right to rely on defendant's representations, and his breach of contract claim does not appear, at this juncture, to be a particularly strong one. However, if this court concludes following the bench trial that plaintiff does, in fact, have potential jury claims, then it can simply schedule a jury trial on those claims at a later date. Otherwise, this court will most likely dismiss these claims at the conclusion of the bench trial.

In light of the foregoing, this court will retain the current trial date as a bench trial, but it would also re-emphasize its view that this is a matter which should settle before then. As this court wrote in its prior order:

> As a final note, this court observes that, while the trial in this matter is presently set for trial over a year from now, it frankly believes that this case could, and should, be resolved with a settlement much sooner than that. In so stating, this court notes that, if Attala's cited figures regarding the amounts of payments it has received from the Design in this case are accurate, then it seems doubtful that these amounts would justify the expense and risk it faces in this lawsuit. It further seems unclear why defendant would wish to incur this expense in order to maintain a business relationship which has become so toxic. Once again, the relief which plaintiff seems most eager to obtain is to be released from his relationship with defendants, and it strikes this court that it would be in the interests of both sides for this to occur, as part of the settlement of this lawsuit.

[Order at 12]. This court hopes that the parties will take these words to heart and attempt to reach an amicable resolution of this case. Barring such, the trial previously scheduled in this matter will proceed as a bench trial, solely as to plaintiff's claim for equitable relief from this court.

In light of the foregoing, it is ordered that the parties' motions for summary judgment are denied. Defendant's motion to dismiss plaintiff's affidavit is dismissed as moot.

This, the 1st day of May, 2024.

8

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI
