IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**THOMAS RUSSELL**                                                    **PLAINTIFF**

**v.**                                                **CASE NO.: 4:22CV165-MPM-JMV**

**ATTALA STEEL INDUSTRIES, LLC;**
**BILLY ATWOOD**                                                 **DEFENDANTS**

## ORDER

On July 15-17, 2024, this court heard testimony and was presented with documentary evidence as part of an evidentiary hearing to decide whether it should equitably rescind the License Agreement ("the Agreement") at issue in this case. This court has extensively discussed the facts of this case in its prior orders denying Rule 12 dismissal and Rule 56 summary judgment, and it will not repeat most of that discussion here. However, this court does note that, in its summary judgment order, it stated its tentative inclination, heading into the evidentiary hearing, to rescind the Agreement based upon the combined weight of three factors. Specifically, this court wrote that:

> In the court's view, the combined effect of plaintiff's arguments regarding the dishonest manner in which, he claims, the License Agreement was negotiated, and the substantively oppressive nature of what appears to be, for all intents and purposes, a perpetual contract, renders his arguments stronger than if he merely relied upon one or the other. This court emphasizes that it will become even more willing to grant plaintiff relief in this case if he can additionally demonstrate that Attala has been performing its duties under the contract in a bad faith manner. Based upon the briefing presently before this court, it strikes this court as quite possible that plaintiff will be able to make such a showing.

[Summary judgment order at 3, quoting order denying dismissal at 7-8].

In describing the exact nature of the dishonesty in negotiations referenced above, this court wrote that:

1

> [I[t appears to this court that defendant [Billy] Atwood, acting on behalf of Attala Steel, may have acted in a reprehensible manner by slipping a provision into the contract at issue in this case which made it renewable each five years, but only at Attala's discretion. The evidence also appears to support plaintiff's assertion that Atwood slipped this provision into the contract in spite of falsely assuring him that the latest contractual draft he submitted merely reflected certain changes which the parties had specifically discussed between them during negotiations. In so stating, this court notes that Russell testified in his deposition that:
>> Russell: I trusted Billy. He said there were three changes, and then subsequently four changes when we added the "including Canada and Mexico" to the agreement. I noted those changes, and that was it. I didn't -- I did not specifically read every word of what was boilerplate. He said, "These are the changes" -- he said, "These are the changes that, you know, we want to make." I looked at those, okay. I signed it.
>
> [Depo. at 58]. For his part, Atwood professed not to recall whether he made this assurance to plaintiff or not:
>> Q: Did you ever in any way tell Mr. Russell that the only changes made to his Steel of West Virginia draft were the ones that you had specifically identified to him?
>> Atwood: I don't remember that conversation.
>
> [Depo. at 34]. When asked the same question earlier in the deposition, Atwood similarly responded "I don't recall. I just don't recall. If I did, I don't remember it." [Depo. at 28].

[Order at 2].

In its order, this court reiterated its view, first stated in the order denying dismissal, that Atwood's alleged false statements could not support a fraud claim under Mississippi law, since such a claim requires that any reliance by the plaintiff be reasonable. *Id.* at 3. This court remains of the view today that the law simply cannot declare it to be "reasonable" for a party to fail to read a contract which he signs, however reprehensible the defendant's actions may have been in misrepresenting what is in the contract. Still, this court continues to believe that any dishonesty shown by the defendant in this regard may constitute one factor, among others, supporting a claim for equitable recission of the contract.

In its summary judgment order, this court noted that another potential factor supporting equitable recission was the disfavored status of perpetual contracts in the eyes of the law. *Id.* In this vein, the Mississippi Supreme Court has written that "[p]erpetual contracts of this character

2

will not be tolerated by the law, or rather, will not be enforced as imposing an eternal and never-ending burden." *Rape v. Mobile & O.R. Co.,* 136 Miss. 38, 100 So. 585, 587 (1924). Prior to the hearing, defendant submitted a trial brief in which it noted authority holding that the maximum duration of a license agreement covering a patent is the length of the patent. The patents at issue in this case have a 20-year duration, and this court accordingly agrees with defendant that the Agreement in this case is not a true perpetual contract. Still, this court continues to believe that this duration is long enough to be highly burdensome to plaintiff, particularly if it can be demonstrated that the defendant was performing his duties under the contract in a bad faith or ineffective matter.

In its summary judgment order, this court stated its view that the latter consideration might well constitute a third factor supporting recission, if the proof at the hearing did, in fact, support a conclusion that defendant had not been performing its duties under the contract in a good faith and competent manner. Going into the hearing, this court expected that the proof on this issue would be somewhat limited, writing in its summary judgment order that:

> This court still believes, however, that, in order to establish a right to obtain such an order, plaintiff must show "something more" than unethical conduct by Atwood in negotiating the contract, such as by establishing that the contract is substantively contrary to public policy and/or by demonstrating that Attala has been performing its duties under the contract in a bad faith or lackadaisical manner. It appears from the parties' summary judgment briefing that plaintiff will attempt to establish such bad faith conduct at trial by demonstrating that defendant did not pay him royalties which it owed in respect to business dealings with NUCOR, a third-party business entity.

*Id.* at 4. In reality, however, the proof at the hearing revealed what this court regards as a much more fundamental and significant failure by defendant in performing the contract, which it discusses below.

At the hearing, this court first heard the testimony of plaintiff Thomas Russell, and that testimony was in line with the above-stated expectations. That is, Russell did seek to raise

3

doubts about whether he had been paid all the royalties owed to him, although he stated that he needed a "forensic accounting" to offer more precise proof in this regard. In his testimony, Russell also noted his suspicions regarding whether Attala Steel was able to manufacture the high-grade steel (Grade 65 and Grade 80) which forms the heart of his patented invention, but he did not offer any hard evidence in this regard. While Russell came across as a credible and highly intelligent witness, his testimony did not significantly alter this court's basic understanding of the case going into the hearing.

This court's view of the case was, however, significantly impacted by the testimony of Billy Atwood, who is now retired but who was Attala's principal at the time of relevant events. Most of Atwood's testimony was in line with his deposition testimony, including his professed lack of recollection regarding the crucial conversation in which, plaintiff maintains, he made false representations to him. However, the truly important revelation of Atwood's testimony (at least to this court) was his admission that Attala was simply not able to manufacture the high-grade steel at issue in this case. As noted above, Russell testified as to his suspicions that this was the case, but his proof on this point was less than compelling. In his own testimony, however, Atwood made it clear that, when Attala tried to manufacture the high-grade steel in question, it proved damaging to its equipment and defendant accordingly had to obtain the steel from outside manufacturers. Atwood did not appear to place any great emphasis upon this issue in his testimony, and this court frankly doubts that he fully understood the legal implications of what he was admitting. For its part, however, this court regards Atwood's testimony as being highly consequential in this case, both as to plaintiff's claim for equitable recission and (as discussed below) to his damages claim for breach of contract.

4

This court is presently concerned with the equitable recission issue, and it concludes that the fact that Attala has proven itself incapable of performing what both sides appeared to regard as a key function under the Agreement renders what was already a strong case for equitable recission an overwhelming one. In this vein, this court would make the rather obvious point that, in deciding whether it would be inequitable to tie plaintiff to a very lengthy contract with a defendant which, this court finds, acted dishonestly in negotiating that contract, the basic inability of that defendant to perform key functions under the contract renders the unconscionable nature of the business relationship that much clearer. In so stating, this court emphasizes that, in executing the Agreement, plaintiff came to Attala in its capacity as a steel mill capable of making the steel itself, not as a steel broker who buys it from others. Moreover, while it does appear that defendant performed some valuable services (such as galvanizing high-grade steel purchased from others) in its capacity as a steel mill, plaintiff has a very reasonable argument that defendant's inability to perform one if its key duties under the Agreement raised costs, reduced profits and potentially led to fewer sales, in such a manner as to constitute a breach of contract and a clear basis for recission.

This court notes parenthetically that it assigns no fraudulent intent to Atwood on this particular issue, since this manufacturing limitation appears to be something which first revealed itself when Attala attempted to comply with its obligations under the contract. This court does wonder, however, why Attala has forced plaintiff to fight to the last bitter inch to obtain his freedom from an Agreement which, defendant knew, it was unable to perform in accordance with the expectations of both sides going into the contract. Indeed, it strikes this court that a more responsible manufacturer would have, upon learning of its inability to manufacture the high-grade steel in question, gone to plaintiff, provided full disclosure regarding its

5

manufacturing issues, and given him an opportunity to get out of the contract. This court does not regard Attala's failure to do so as being sufficient grounds for a fraud claim, but it does believe that it may support damages for breach of contract and serves as an additional strike against defendant when it comes to awarding equitable relief.

In further considering the equities of this case, this court believes that the fact that Attala tried but failed to manufacture the high-grade steel makes it clear that both sides believed, going into the contract, that this is a function which defendant would be performing itself. This conclusion is supported by the testimony at the hearing of Attala salesman Jordi Villaneuva that he only learned at some point well into the contract that defendant "was not capable" of making the high-grade steel in question. It seemed clear to this court that Villanueva's assumption had been that Attala would, in fact, be making the high-grade steel itself, and it believes that any reasonable person would make this assumption regarding a manufacturing contract with a steel mill. Under these circumstances, this court believes that equity clearly requires that plaintiff be given a chance to rescind the contract with defendant and find a steel mill who, unlike Attala, can competently manufacture his product to the required specifications.

In the court's view, the fact that defendant is unable to perform its basic duties under the Agreement would, by itself, be reason enough to allow plaintiff to obtain an equitable recission of it. As stated previously, however, the case for recission becomes overwhelming when one additionally considers the dishonest conduct which, this court finds, Atwood exhibited in negotiating the contract in the first place. In this vein, this court reiterates that it found Russell's testimony to be credible, but it did not regard Atwood's professions of a lack of recollection of the relevant conversations to be credible. In so stating, this court notes that, in spite of his advanced age, Atwood specifically recalled discussing certain rather dry amendments to the

Agreement, including modifications to the choice of forum clause. Moreover, Atwood admitted that the crucial five-year renewal clause was subjectively important to him, since, he testified, he did not want Russell to be able to simply walk away from the contract after only five years. This raises the obvious question of why Atwood was able to remember his discussion of more mundane contractual provisions with plaintiff and yet not recall discussions about a renewal provision which, he admits, was important to him.

It appears that the importance which Atwood placed on the renewal issue presented him with a dilemma, since it seems clear that Russell would not have knowingly agreed to any contract which limited his ability to walk away after five years. Indeed, the instant litigation makes it plain how important this right is to plaintiff, and the original draft which he submitted to Atwood gave *both* sides such a right. In light of the foregoing, it appears to this court that the only way Atwood could have gotten the renewal provision he wanted into the Agreement was to "slip it past" Russell. Plaintiff credibly testified that this is just what happened, and he has been very consistent throughout this litigation regarding the manner in which, he claims, Atwood accomplished this.

Plaintiff's testimony at the hearing was consistent with the allegations of his complaint, where he alleged that:

> 21. Defendants never specifically pointed out to Russell, either verbally or in writing, the additional changes they made to the SOWV Agreement beyond those previously acknowledged and agreed to by Russell.
> 22. It was Defendants' representation and Russell's understanding that the above changes were the *only* substantive changes made to the draft SOWV Agreement. In other words, Defendants represented to Russell that the *License Agreement* was materially the same as the SOWV Agreement *except for* the changes that Russell had agreed to prior to signing.

[Complaint at 5]. Once again, Atwood denies any recollection of his conversations with plaintiff in this regard, and, as such, does not specifically deny his version of events. In light of the

7

foregoing, this court concludes that plaintiff's version of events is likely the correct one, even if it is to assume that Atwood's professed lack of recollection is genuine. This court reiterates, however, that it does not regard Atwood's denial as credible, and it frankly believes that he knew exactly what he was doing when he represented to plaintiff that the previously-discussed changes were the only ones in the latest draft. Of course, this does not alter the fact that Russell could – and should – have fully read the contract before signing it, but this court does not believe that plaintiff's omission in this regard makes Atwood's actions any less reprehensible in the eyes of equity.[1]

In light of the foregoing, this court will order the recission of the Agreement in this case, effective as of the date of this order. Moreover, this court concludes that Atwood's previously-discussed admissions regarding Attala's inability to manufacture the high-grade steel requires it to reconsider its inclination going into the hearing to dismiss plaintiff's breach of contract claim. The manufacturing issue aside, this court concludes that plaintiff presented sufficient evidence at the hearing to raise triable jury issues regarding whether he was paid all the commissions owed to him under the contract. This court therefore concludes that a jury trial on breach of contract will be required in this case, and it further concludes that plaintiff should be granted the equitable accounting which he seeks in order to prosecute these claims.

This court has no hesitation in granting plaintiff any court order he might need to conduct an equitable accounting in this regard, but a more difficult issue involves who should pay the forensic accountant to conduct such an accounting. This court's first impression was that any such accountant would be in the nature of an expert witness for the plaintiff, and that, as such, he

---

[1] To reiterate, this court finds that plaintiff's failure in this regard does preclude a fraud claim on his part, and it believes that, by so ruling, it is holding him accountable for his failure to read the revised draft of the Agreement.

8

should pay for those accountant's fees, subject to reimbursement if he wins at trial.  Upon reflection, however, it strikes this court that plaintiff does have a reasonable argument that, given defendant's unethical conduct discussed above, including its having required plaintiff to go to great expense to litigate his right to freedom from the Agreement, it should bear the costs in this regard.

Ultimately, this court believes that this is essentially a discovery matter, and it relies heavily upon the Magistrate Judges of this district on such matters.  This court therefore leaves this issue to Judge Virden's discretion (following briefing submitted by the parties), based upon any legal authorities which might exist in this context.  This court will have its staff set the jury trial in this case on a date which gives sufficient time for the equitable accounting to be performed, and it further recommends that the parties use this time period to attempt to settle this case.[2]  In so stating, this court notes its belief that, while plaintiff does appear to have a potentially viable breach of contract claim, it is far from clear that the damages involved in any such claim will be sufficient to justify the expense of trial.  Plaintiff should also be aware that, while he has benefitted from this court's favorable view of his equitable claims, the success or failure of his breach of contract claim will depend upon the judgment of jurors.  In this vein, this court notes that North Mississippi jurors tend to be quite conservative, and they often tend to favor defendants in civil trials, both as to liability and damages.  In light of these considerations, this court believes that plaintiff should be eager to settle this case, and it further believes that defendant should be willing to pay a reasonable amount to resolve it.

---

[2] This court notes that, mindful of the cost of this litigation to the parties, it has no intention of allowing another round of summary judgment briefing, and it is disinclined to allow any further amendments to the complaint.

9

In light of the foregoing, it is ordered that the Agreement in this case is hereby rescinded, effective as of the date of this order. This court requests that Judge Virden resolve the above-discussed issues relating to an equitable accounting, and this court will set a jury trial on plaintiff's breach of contract claim once it becomes clear how long such an accounting will take.

This, the 23rd day of July, 2024.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI