**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**THOMAS RUSSELL**                                                            **PLAINTIFF**

**v.**                                                           **Case No. 4:22-CV-165-MPM-JMV**

**ATTALA STEEL INDUSTRIES, LLC; and
BILLY ATWOOD**                                                          **DEFENDANTS**

**<u>ORDER</u>**

This case, which is presently set for a second trial on July 21, 2025, has recently seen

significant and unexpected events.  On May 15, 2025, defendant Attala Steel Industries, Inc.

(Attala) filed a motion to enforce settlement, in which it argued that plaintiff has failed to comply

with the terms of a settlement agreement to which he had allegedly agreed.  [Docket entry 220-1

a 1].  Shortly thereafter, plaintiff informed Judge Virden, in an email which she placed on the

docket, that he wished to "withdraw his remaining claims, as I no longer have the means to

continue to trial." [Docket entry 222-1 at 1].  Plaintiff has since sent emails to this court

expressing a similar desire to drop his remaining claims – albeit without prejudice - to which

defendants have replied.  Significantly, it does not appear that plaintiff's stated desire to drop his

remaining claims is conditioned upon any settlement agreement, and this court's understanding

(from Judge Virden) is that he may have developed reservations regarding some of the

provisions of the proposed agreement.  Moreover, while Attala (predictably) does not object to

plaintiff dismissing his claims, it insists that any such dismissal should be with prejudice.

For its part, this court does not wish to be overly hasty in involving itself in settlement

negotiations among the parties, particularly when, as here, the context of those negotiations is

fluid and rapidly evolving.  Further, given that the briefing submitted by Attala regarding its

1

motion to enforce settlement does not reflect the recent events in this case, this court concludes that it should dismiss the motion to enforce without prejudice to the filing of a revised such motion. However, this court recommends that the parties make one last effort to resolve the remaining issues in this case before doing so, since there does not appear to be a great deal of daylight between them. This court concludes that, if defendant chooses to re-file its motion to enforce settlement, then that motion should reflect the events which have transpired since its original motion was filed, including plaintiff's offer to dismiss his claims and this court's order today. Moreover, given that Judge Virden has assisted the parties in their settlement negotiations, and is familiar with their conduct during same, this court believes that a ruling on any such motion would best be handled by a Report and Recommendation (R&R) from her. This court requests that Judge Virden provide such an R&R, in the event that defendant chooses to refile its motion.

This court's order today does not deal primarily with the motion to enforce settlement, but, rather, with legal issues arising from plaintiff's surprising revelations that he 1) is not prepared to proceed to the trial scheduled in this matter and 2) wishes to drop his remaining claims, relating to Attala's alleged breach of contract. In the court's view, these revelations raise serious questions as to whether plaintiff's remaining damages claims should be dismissed not only because he wishes to do so, but also because he has failed to properly prosecute them. In so stating, this court notes that part of prosecuting a case is being able to show up for trials at the appointed time, and, as discussed below, this is the second time in which plaintiff has expressed reservations about his ability to do so. This court further notes that this case is one of the oldest on its docket, and the Civil Justice Reform Act (CJRA) strongly encourages federal judges to bring cases such as this one to an expeditious close. In practical terms, this means that this court

is much more reluctant to schedule an additional trial on a case as old as this one, than it is with a more recently-filed case.

This court makes no finding on any failure to prosecute issues now, but it does note that they serve as a potential obstacle to any future decision by plaintiff that he wishes to go to trial after all. Failure to prosecute and CJRA considerations aside, it seems clear that any hypothetical request by plaintiff, at some point in the future, to allow him to have a damages trial after all would represent a request for a rather generous accommodation from this court. It is far from clear that plaintiff is in any position to request such an accommodation, since he appears to have abused one very significant accommodation which he already received from this court. In so stating, this court notes that plaintiff's position has long been that his primary goal in this lawsuit has been to obtain the freedom to market his patented product without being subjected to the onerous terms of his contract with defendant Attala Steel Industries, Inc. (Attala). Plaintiff obtained this freedom following a bench trial on these matters held last year, and this success was largely as a result of the excellent work performed by his former counsel, Lee Watt.

It should be noted that this court required Mr. Watt to represent plaintiff at trial with no assurance (or even likelihood) that he would be paid for doing so, even though he had filed a motion requesting permission to withdraw from his representation of plaintiff, due to his failure to pay his legal bills. Importantly, this court denied Watt's motion based upon plaintiff's specific assurances that he was committed to paying the legal bills he owed to his attorney, once he was in a position to do so. Specifically, this court wrote in a July 2, 2025 order denying Watt's request to withdraw as counsel that:

> [P]laintiff has responded to his counsel's motion to withdraw by making the following representations to this court:
>> It would be highly prejudicial to lose my attorney two weeks before the trial.
>> Financial hardship doesn't afford me the ability to obtain another attorney, at this

> > time. Postponing the trial would further delay potential relief and continue my inability to earn something from my patent ownership. I will be forced to represent myself on a Pro Se basis, as I do not wish to have the existing trial date of 7/15/24 postponed.
>
> [Plaintiff's response at 1].
>
> It appears that plaintiff's above-mentioned financial difficulties have played a major role in his disagreements with his counsel, but he represents in his response that he has already paid his counsel a very significant amount of attorneys' fees and that he is fully committed to paying any future fees which are incurred in this case. Specifically, plaintiff represents that:
>
> > I no longer have the means to keep current with Attorney Watts' outstanding invoices, however, I have committed to paying all current and future invoices through a payment plan. I have also offered Attorney Watt the ability to attach a voluntary lien against my property in NH until the entirety of my past and present invoices have been paid in full.
>
> *Id.* It is, of course, not this court's place to interject itself into a billing dispute between an attorney and his client, but it does note its belief that plaintiff appears sincere in his promise to fully pay his legal bills in this case.

[Docket entry 170-1 at 2].

This court thus required Mr. Watt to represent plaintiff at trial – essentially for free - based upon his stated intention to fully pay his legal bills once he was able to do so. This court believes that, under these circumstances, many attorneys would have given a half-hearted representation at trial, but, to his credit, Watt provided plaintiff with excellent representation which resulted in him obtaining the contractual freedom which had always been his primary goal in this litigation. In light of this fact, this court believes that plaintiff's appropriate attitude towards Watt is one of sincere gratitude, but it seems clear that this is not the case.

In so stating, this court notes that Attala's motion to enforce settlement is supported by text messages from plaintiff to Watt, as part of an effort to negotiate Watt's share of the settlement which plaintiff appeared set to receive from Attala. [Docket entry 220-1 at 5]. In these text messages, plaintiff provided Watt with a take-it-or-leave it offer of a mere $10,000 for his unpaid legal bills in this case, and, when this offer was (quite understandably) rejected, plaintiff responded by texting "thanks for nothing." [*Id.*] Frankly, this court would never have

required Watt to represent plaintiff at trial if it had known that this would be the manner in which he would react upon receiving a settlement offer in this case, and it is safe to say that, as a result of his recent actions, plaintiff now finds himself in a very poor position to request any future accommodations from this court.

In so stating, this court would further observe that litigation deadlines set by federal judges are not things which litigants are entitled to disregard without consequences, any more than a traveler who misses a train is entitled to request that it be turned around to pick him up. Moreover, given the advanced age of this case, this court regarded the July 2025 trial date as being not just any train, but the last train out of town. Indeed, this court gave careful consideration as to whether it should set this second trial date at all, since plaintiff had already obtained, at the initial bench trial, the equitable relief which, he had made clear, was his primary goal in this lawsuit. Moreover, this court was certainly not going to require Mr. Watt to represent plaintiff for free at a second trial, and going to trial with a *pro se* litigant is always problematic. In spite of these reservations, this court gave plaintiff a trial date on his remaining damages claims, and he has now stated his inability to proceed to that trial. Under these circumstances, this court would be rather strongly disinclined to exercise any discretion it might have to grant plaintiff yet another trial date in this matter.

In light of the foregoing, this court will grant plaintiff's request that his remaining damages claims be dismissed without prejudice, but it will do so with one important caveat. Namely, this court wishes to emphasize that its ruling dismissing plaintiff's claims without prejudice only applies to the extent to which his stated desire to dismiss his remaining claims is truly a voluntary act on his part. In so stating, this court would observe that, to the extent that plaintiff is essentially giving defendant a gift in this regard, then it seems appropriate that he

5

place conditions upon this gift. Moreover, plaintiff's stated reason for wanting to dismiss his claims is his financial inability to proceed to trial, and this does not strike this court as an unreasonable context in which to request dismissal without prejudice. Further, it is unclear to this court why defendant would wish to look such a gift horse too closely in the mouth. At the same time, this court emphasizes that plaintiff appears to have committed a number of significant failures in his litigation of this case, including (but not limited to) 1) breaching his assurances to this court regarding his willingness to pay his counsel in full 2) his failure to meet the second trial deadline set by this court and 3) his alleged failure to meet the terms of the settlement agreement in this case.

Each of the above alleged failures represents a potential obstacle to plaintiff attempting to revive his dismissed claims, either in this court or some other court, and nothing in this order is intended to absolve plaintiff from any of his failures in this regard. Having said that, this court's impression from plaintiff's emails is that he is prepared to move on and count the relief he has already obtained in this case as a sufficient victory. That being the case, this court believes that the better approach is to allow sleeping dogs to lie and for defendant to use any arguments which it might have in this regard defensively, in the event that plaintiff does attempt to revive his claims. If defendant chooses to litigate these issues now, then this court will rule upon any such motions in this regard in due course, though it can discern no reason why its rulings in this regard should be given priority over older motions filed in other cases.

This court notes parenthetically that, in its view, Attala may be placing too great an importance on whether any dismissal is expressly without prejudice. This is because Fifth Circuit law is clear that "[w]here further litigation of [a] claim will be time-barred, a dismissal without prejudice is no less severe a sanction than a dismissal with prejudice." *McGowan v.*

6

*Faulkner Concrete Pipe Co.,* 659 F.2d 554, 556 (5th Cir. 1981). This court further notes that Mississippi has a three-year statute of limitations for breach of contract claims, *see Wallace v. Greenville Pub. Sch. Dist.*, 142 So.3d 1104, 1106 (Miss. Ct. App. 2014), and it certainly seems possible that any attempt by plaintiff to file future claims for breach of contract would be barred by the relevant statute of limitations. Statute of limitations issues aside, plaintiff may well face other legal obstacles to filing any future lawsuits in this regard, including (but not limited to) *res judicata*, judicial estoppel and/or the first-to-file rule. Of course, any such obstacles will be considered by whichever judge presides over the subsequently-filed case, but this court notes that the law generally does not permit parties to allow claims to lapse by missing important deadlines and then, once they are dismissed, take those same claims to another court.

It strikes this court that, at the very least, plaintiff would have to answer for his litigation failures in this case in any subsequent lawsuit, and it is far from clear to this court that he would be able to provide satisfactory answers in this regard. This court will leave it to Attala to decide whether this risk is sufficiently great that it still wishes to pay plaintiff to settle this lawsuit, since he has not conditioned his dismissal of his claims upon any such payment. If so, then Attala may re-file its motion to enforce settlement, if it wishes to do so. At this juncture, this court simply concludes that it should grant plaintiff's request to dismiss his damages claims in this case without prejudice, and it will cancel the upcoming trial in this matter, with no present intention of ever re-scheduling it. Indeed, this court presently has no intention of allowing plaintiff to file an amended complaint re-asserting any damages claims he might have, and that being the case, it can discern no claims which might even conceivably be the subject of a trial. It thus appears that this case is, for all practical purposes, over.

At the same time, this court would emphasize that its prior equitable orders granting plaintiff the freedom to market his product remain fully in effect. Indeed, this court's concerns regarding plaintiff's actions as a legal client do not change its view that Attala should have released him from the licensing agreement in this case a long time ago. Moreover, given defendant's rather reprehensible track record in this case, it wishes to retain jurisdiction over this case for the purpose of enforcing its prior orders. Plaintiff has made it clear in emails to this court that his primary concern at this point is that he not lose the legal rights he already gained at the bench trial last year (largely due to Watt's representation), and this court fully agrees that there is no basis for him to do so.

In light of the foregoing, this court will give this case the status of a dormant one, and, in so doing, it will use its standard procedural device of an administrative closure. This court notes that the effect of an administrative closure is no different than a simple stay, except that it affects the count of active cases pending on the court's docket for purposes of the CJRA; i.e., administratively closed cases are not counted as active. *See Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 392 (1st Cir. 1999) ("This method is used in various districts throughout the nation in order to shelve pending, but dormant, cases."). The Fifth Circuit has endorsed this procedural device, *see Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 167 (5th Cir. 2004), which does not constitute a dismissal of the case. By stopping short of a full dismissal of this case, at least for now, this court will retain jurisdiction over it for the purpose of addressing any failures on the part of defendant to comply with its prior orders.

It is therefore ordered that plaintiff's request to dismiss his remaining claims in this case is granted, and those claims will be dismissed without prejudice. In so ordering, this court reserves judgment regarding whether some other basis for dismissal *with* prejudice might exist,

as discussed in detail above. Attala's motion to enforce settlement is hereby dismissed without prejudice, and this court requests that, if that motion is re-filed, Judge Virden provide a Report and Recommendation regarding same. With these caveats, the trial presently scheduled in this matter is hereby cancelled, and this case is administratively closed.

So ordered, this the 21st day of May, 2025.


/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI